**Ronald S. BARNICK, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–1676C.**

United States Court of Federal Claims.

Feb. 27, 2008.

Michael J. Calabro, Jacksonville, FL, for plaintiff.

Armando Rodriguez–Feo, U.S. Department of Justice, Washington, DC, with whom were Jeffrey S. Bucholtz, Acting Assistant Attorney General and Director Jeanne E. Davidson, for defendant.

## OPINION

FIRESTONE, Judge.

The plaintiff, Ronald S. Barnick ("plaintiff" or "Barnick"), filed this action seeking review of the decisions of the Air Force Board for Correction of Military Records ("AFBCMR"), and for monetary damages for loss of military pay and benefits, as well as other monetary and non-monetary relief. The defendant, the United States ("defendant" or "government"), has moved to dismiss some of Mr. Barnick's claims under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") on the grounds that the court lacks subject matter jurisdiction over such claims. The government has moved to dismiss certain other claims under RCFC 12(b)(6) on the grounds that Mr. Barnick has failed to state a claim upon which relief could be granted. Finally, the government has moved for judgment on the administrative record pursuant to RCFC 52.1 in connection with Mr. Barnick's objections to the decisions of the AFBCMR.

## BACKGROUND

The numerous facts surrounding this ten year dispute between Mr. Barnick and the

United States Air Force ("USAF") are summarized below.[1]

## I. AFBCMR Decisions I and II

Mr. Barnick became a member of the USAF in 1972. He separated from the USAF in 1981, at which time he entered the United States Air Force Reserve ("USAFR"). At no time relevant to this case was Mr. Barnick assigned to extended active duty service as a member of the USAFR (i.e., for a period beyond 30 days).

On May 30, 1993, Mr. Barnick injured his back in an automobile accident.[2] He was examined by the Chief of Aeromedical Services on June 25, 1993 and deemed fit for flying duties at that time. In March 1994, Mr. Barnick aggravated his back injury while performing military duties in Panama. As a result, Mr. Barnick was disqualified from military duties on April 9, 1994. Mr. Barnick returned to non-flying military duties on March 14, 1995.

Shortly thereafter, the USAF conducted a Line of Duty ("LOD") investigation into Mr. Barnick's aggravated injuries and initially recommended a designation of "In Line of Duty" ("ILOD") for the aggravation of Mr. Barnick's back injury. However, a legal review of this recommendation in June 1996 concluded that his injuries were solely caused by the automobile accident and not aggravated by his military service. The Appointing/Approving Authority accepted the findings of the legal review and concluded that Mr. Barnick's injuries were "Not In Line of Duty" ("NLOD"). This finding was finalized on December 31, 1996.

In a memorandum dated October 1, 1997, Mr. Barnick was notified that separation action had been initiated against him for Physical Disqualification. The memorandum stated that Mr. Barnick had three options: (a) elect retirement (he was retirement eligible at that time); (b) elect to have a fitness determination by a physical evaluation board

("PEB"); or (c) be separated from the military with an honorable discharge. Mr. Barnick elected to submit a retirement application and he was transferred to the Retired Reserve on January 25, 1998.

On September 27, 1999, Mr. Barnick submitted an application for records correction to the AFBCMR, in which he requested the following:

a. Removal of the NLOD determination from his records;

b. Removal of all references to the NLOD determination from his records, including the June 14, 1996 Report of Investigation;

c. Removal of all documents resulting from the NLOD determination;

d. Removal of his request for transfer to the Retired Reserve;

e. Removal of all references to his request for transfer to the Retired Reserve;

f. Return to duty for evaluation of his medical condition by a Medical Board;

g. Payment of all incapacitation pay and allowances due to him for the period from April 9, 1994 to January 25, 1998;

h. Payment of all regular duty or retired pay and allowances due to him from January 25, 1998 to the date the USAF returned him to duty to evaluate his disability;

i. Credit for pay and longevity purposes from January 25, 1998 to the date the USAF returned him to duty;

j. Reimbursement for all medical expenses, including transportation and medical insurance premiums, that he paid during the period from April 9, 1994 to the date the USAF returned him to duty;

k. Payment of regular duty pay or incapacitation pay during the period he was returned to duty and, if found

---

1. For purposes of the government's motion to dismiss, the court takes as true the allegations of the complaint. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In addition, because the government has also moved for judgment on the administrative rec-

ord, the court relies upon the facts contained in the administrative record.

2. Mr. Barnick was diagnosed with lumbar sacral strain (low back pain) by his civilian orthopedic practitioner on June 21, 1993.

physically disqualified from further duty, separation and placement in the Retired Reserve, or medically retired with the disability percentage so determined;

l. If medically retired, that he be given an opportunity to participate in the Survivor Benefit Plan; and

m. Correction of his DD Form 214 (discharge certificate) and other separation documents to indicate that he was separated or retired by reason of physical disability.

In response to Mr. Barnick's application, advisory opinions were provided to the AFBCMR by three entities: the Air Force Reserve Command Aerospace Medicine Branch ("SGPA"); the Legal Office ("JA"); and the Military Personnel Division ("DPM"). The SGPA recommended that, due to evidence suggesting that Mr. Barnick's back pain was aggravated by his military duties, and possibly even accelerated by his military duties before the automobile accident, the finding for his back pain injury should be ILOD. The JA also recommended that Mr. Barnick's injury be designated as ILOD. The DPM made the following statements:

a. The removal of the NLOD documents and Mr. Barnick's request for transfer to the Retired Reserve could be granted at the discretion of the AFBCMR;

b. If Mr. Barnick's injury was found ILOD, Mr. Barnick could be returned to the active Reserve for purposes of meeting a medical evaluation board ("MEB"). However, prior to meeting a MEB, Mr. Barnick should be evaluated to determine if a MEB is required;

c. To receive incapacitation pay from April 9, 1994 to January 25, 1998, if Mr. Barnick was other than profile 4, he would have to demonstrate loss of civilian income;

d. Requests for payment of all regular duty or retired pay due to Mr. Barnick from January 25, 1998 to the date he was returned to duty for evaluation of his disability would need to be ordered by the AFBCMR and paid by the Defense Finance and Accounting Service ("DFAS");

e. Requests for a credit for pay and longevity purposes from January 25, 1998 to the date the USAF returned Mr. Barnick to duty would have to be directed to DFAS and the Air Reserve Personnel Center;

f. Mr. Barnick would be entitled to submit his medical bills for reimbursement through appropriate medical channels;

g. If Mr. Barnick was returned to duty to meet a MEB, he would be eligible for incapacitation pay, but still would be required to submit the necessary paperwork;

h. Mr. Barnick should have the opportunity to participate in the Survivor Benefit Plan if he was medically retired;

i. A request for correction of Mr. Barnick's discharge certificate to reflect that he was separated or retired by reason of physical disability would be addressed if relief were granted by the AFBCMR.

These advisory opinions were forwarded to Mr. Barnick through his attorney of record. In response, Mr. Barnick asserted that his LOD determination had been mishandled. Mr. Barnick also asserted that he would have been entitled to incapacitation pay for an earlier period if his fitness for duty had been profiled in a timely manner.

## A. AFBCMR Decision I (2001)

On February 6, 2001, the AFBCMR issued its first decision. The AFBCMR concluded that "sufficient relevant evidence" demonstrated the existence of probable error or injustice regarding Mr. Barnick's LOD determination, as there was no misconduct on his part.[3] The AFBCMR found that Mr. Barnick promptly reported his initial back injury, had been cleared for flying duties by military medical authorities, and that subsequent flying duties aggravated his injury. Accordingly, the AFBCMR recommended

---

**3.** The AFBCMR accepted Mr. Barnick's application although it was not timely.

that the NLOD determination be corrected to an ILOD determination.

The AFBCMR also recommended favorable consideration of Mr. Barnick's request for removal of his name from the Retired Reserve List and return to duty for evaluation by a MEB. Prior to doing so, however, the AFBCMR determined that a military medical treatment facility should determine whether Mr. Barnick's injury warranted evaluation by a MEB. The AFBCMR stated that, as a result of the correction in his LOD determination, Mr. Barnick was "eligible to receive incapacitation pay and reimbursement of medical expenses he [had] incurred. However, applicant must submit the proper documentation to the appropriate agencies."

On February 6, 2001, the Director of the Air Force Review Board's Agency ("Director") approved the AFBCMR's recommendations and ordered the correction of Mr. Barnick's military records to show that Mr. Barnick's injuries sustained in the motor vehicle accident were aggravated by his military service and thus found to be ILOD, and that all documents pertaining thereto be amended to reflect his injuries as ILOD. The Director also ordered that Mr. Barnick's medical records be reviewed to determine if his medical condition, as of January 25, 1998, disqualified him for continued active duty and if referral to a MEB would be appropriate. If the review determined that MEB action would be appropriate, the Director ordered that Mr. Barnick be issued invitational travel orders for undergoing physical examination and review by a MEB and a PEB to determine his medical condition as of January 25, 1998. The results of the evaluation were to be forwarded to the AFBCMR for appropriate action.

On March 20, 2002, Mr. Barnick filed a complaint with this court to compel compliance with the AFBCMR's decision. *Barnick v. United States*, No. 02-219 (filed March 20, 2002). Mr. Barnick voluntarily dismissed this complaint on September 30, 2002 and continued in his efforts to have the USAF and the USAFR comply with the AFBCMR's decision. This included continued contact with the USAF officer designated as his contact on this matter.

A MEB was convened on September 5, 2002 and referred Mr. Barnick's case to an informal physical evaluation board ("IPEB") with a diagnosis of low back pain. On October 15, 2002, the IPEB found Mr. Barnick unfit for further military service based on a diagnosis of low back pain and recommended Mr. Barnick's discharge with severance pay with a compensable rating of ten percent. Mr. Barnick was then scheduled to have his case heard before a formal physical evaluation board ("FPEB"). On January 7, 2003, Mr. Barnick requested a full and complete physical examination prior to meeting the FPEB. Mr. Barnick's request for a physical examination was denied by the Director. Since the FPEB was tasked by the Director to determine Mr. Barnick's medical condition as of January 25, 1998, the Director determined that a physical examination in 2003 would be of no benefit in making this determination. On January 9, 2003, the FPEB found that, in January 1998, Mr. Barnick was unfit for further military service and at that time should have been discharged with severance pay with a compensable rating of ten percent instead of being placed in the Retired Reserve. On March 14, 2003, the Air Force Personnel Council ("ASAP/PC") determined that Mr. Barnick should be discharged with severance pay with a disability rating of ten percent.

Mr. Barnick's assignment to the Retired Reserve was revoked on June 16, 2003. In accordance with the ten percent disability determination, Mr. Barnick was paid severance pay in the amount of $155,470.00 on July 15, 2003.

### B. AFBCMR Decision II (2003)

Mr. Barnick did not agree with the FPEB's findings regarding his level of disability and subsequently forwarded a Petitioner's Post–PEB Submission ("Submission") to the AFBCMR. The Submission alleged that the AFBCMR's decision of February 6, 2001 had not been implemented by the USAF and USAFR. According to Mr. Barnick, instead of fully correcting his adverse LOD determination, the USAF simply placed a single-page document in his official military record. Mr Barnick alleged that a

number of pages and entries from his medical records were erroneously removed and that entries that should have been removed were still in the file. Mr. Barnick argued that the USAF and USAFR refused to provide him a physical in violation of federal law and military regulations. He argued that he was prevented from making an application to the Veterans Administration ("VA") due to the overturned NLOD determination remaining in his records and that this precluded his entitlement to VA benefits.

In the Submission, Mr. Barnick requested that the AFBCMR order that the remainder of the relief sought in his first AFBCMR application be granted. In addition, Mr. Barnick asked that he be "constructively retained on active duty between January 1998 to the present" and that his record reflect continued active duty, pending his requested physical examination. He further asked that the rating by the PEB be made prospective, not retrospective. In the alternative, Mr. Barnick requested the following: (a) that he be constructively placed on the Temporary Disability Retired List ("TDRL") between January 1998 and January 2003; (b) that his disability rating on January 1998 be greater than or equal to thirty percent; (c) that he receive payment in accordance with TDRL statutes and regulations at fifty percent of his base pay for the five-year period between January 1998 and January 2003; and (d) that the PEB be treated as a final TDRL reevaluation.

An advisory opinion, addressing the concerns raised by Mr. Barnick in the Submission, was provided by the DPM to assist the AFBCMR in considering the Submission. In the advisory opinion, the DPM represented that there was no provision in the law that would permit placing Mr. Barnick on "constructive active duty." Regarding the issue of voiding Mr. Barnick's retirement, the DPM stated that this had already been accomplished and that Mr. Barnick's military records were updated to reflect his discharge with severance pay effective May 5, 2003. Regarding the incapacitation pay issue, the DPM stated that Mr. Barnick was notified in a letter dated July 10, 2003 of his eligibility and entitlement to incapacitation pay for an initial six-month period. The DPM stated that the July 10, 2003 letter explained to Mr. Barnick what had transpired regarding the processing of his incapacitation pay. According to the DPM, payment of incapacitation pay involves two steps. First, a person's eligibility must be approved. Second, the actual amount of any entitlement must be determined. In Mr. Barnick's case, although his eligibility for the initial six-month period had been approved, he did not submit the required documentation to demonstrate a loss of civilian pay for that period. Therefore, the Reserve Pay Office, which is charged with computing the amount of incapacitation pay a member is entitled to receive, could not continue to process his request. The July 2003 letter also informed Mr. Barnick that an AFRC Working Group had been established regarding his incapacitation pay and included an explanation of the information he was required to submit in support of his claim. Finally, the DPM stated that it declined to assess any additional incapacitation pay to which Mr. Barnick might be entitled until the resolution of his pending AFBCMR request.

The advisory opinion was forwarded to Mr. Barnick's attorney of record for review and comment. In response, his attorney asserted that with the exception of the incapacitation pay issue, the advisory opinion failed to adequately address Mr. Barnick's other concerns.

On December 10, 2003, the AFBCMR issued its second decision. The AFBCMR stated that it understood that the FPEB recommended that Mr. Barnick be discharged with severance pay based on a disability rating of ten percent. However, the FPEB's recommendation was not returned to the AFBCMR for a final determination, but was instead mistakenly forwarded to the ASAP/PC for disposition. The AFBCMR opined that since Mr. Barnick was not in an active status, there was doubt as to whether the ASAP/PC's actions were legally sufficient. Therefore, the AFBCMR independently affirmed the ASAP/PC's actions.

Next, the AFBCMR considered Mr. Barnick's request to be constructively placed on active duty or on the TDRL between Janu-

ary 1998 and January 2003, with a disability rating greater than or equal to thirty percent. The AFBCMR concluded that "[e]vidence [had] not been presented which would lead [it] to believe that the applicant's condition warranted a rating greater than [the ten percent] recommended by the FPEB." The AFBCMR found no error in the FPEB evaluation process. According to the AFBCMR, in light of the circumstances of the cases, the only "proper and fitting" action remaining was "to correct [Mr. Barnick's] record as though he was processed through the [disability evaluation system] in 1998."

On January 21, 2004, the Director ordered that Mr. Barnick's military records be corrected as recommended by the AFBCMR.

## II. The Present Litigation

Mr. Barnick filed the instant complaint on November 15, 2004. Count I of the complaint alleges that: (1) he is entitled to military pay or incapacitation pay for the period from 1993 until his legal date of separation from the USAFR in 2003; (2) he was entitled to have his disability rated by the USAF prior to his legal date of separation; (3) if his disability had been properly evaluated and rated, he would be entitled to either payment of disability severance pay or monthly payments of disability retirement pay; (4) if his disability had been properly evaluated during his active duty service, he would have been entitled to military medical care at no cost by TRICARE, the military's health insurance system, until his legal separation; (5) if his disability had been properly evaluated and rated at the time of his separation, he would be medically retired and entitled to payment of his medical bills by TRICARE; (6) if his disability had been properly evaluated and rated at the time of his separation, he would be entitled to payment of his dependent's medical bills by TRICARE; and (7) if his disability had been properly evaluated and rated at the time of his separation, he would be entitled to Department of Veterans Affairs ("DVA") disability benefits, including

medical treatment and monthly payments of disability compensation.

Count II of the complaint alleges that the USAF and USAFR failed to implement the AFBCMR's February 6, 2001 decision. Count III of the complaint alleges that the decisions of the AFBCMR were arbitrary and capricious, contrary to applicable law, and not in accordance with the existing facts and record of evidence.

In the complaint, Mr. Barnick seeks the following damages: loss of military pay from 1993 to 2004 in the amount of $619,912.89; loss of military benefits allowances from 1993 to 2004 in the amount of $140,709.25; loss of military leave benefits from 1993 to 2004 in the amount of $64,304.60; loss of military incapacitation pay from 1993 to 1998 in the amount of $169,482.67; loss of use of military pay funds from 1998 to 2004 in the amount of $11,000.00; loss of military retired pay from 1998 to 2004 in the amount of $280,000.00; loss of VA pension funds from 1998 to 2004 in the amount of $21,000.00; loss of use of military retired pay funds from 1998 to 2004 in the amount of $111,000.00; loss of 4,090 Reserve retirement points; and expenditures for lost TRICARE coverage from 1998 to 2004 in the amount of $9,600.00. Mr. Barnick also seeks legal fees in the amount of $69,560.00. He also claims a loss of VA benefits from 1998 to 2004 valued at $35,000.00.

Before the complaint was filed, the USAF sent a letter to Mr. Barnick, dated May 3, 2004, explaining the procedure by which he could apply for reimbursement of his medical bills. In this letter, Mr. Barnick was provided a USAF contact who was available to assist him on this issue. As of February 10, 2005, Mr. Barnick had not submitted a claim for reimbursement of his medical bills with the agency responsible for handling such claims, as required by the AFBCMR decision. Mr. Barnick contends that a claim listing all medical expenses was submitted on July 15 *and* 24, 2002, in compliance with written instructions given to Mr. Barnick on July 11, 2002.[4]

---

4. At oral argument, Mr. Barnick's counsel represented that Mr. Barnick had not been reimbursed for certain out of pocket medical expenses he

incurred between 1993 and 1998 as a result of his back injury, and the government indicated that Mr. Barnick would be required to submit

It is not disputed that after the complaint was filed, Mr. Barnick received a check for incapacitation pay for the period of May 1993 to January 24, 1998, as required by the AFBCMR decision.

In response to the complaint, on April 19, 2005, the government filed a motion to dismiss and for judgment on the administrative record. After briefing was complete, the parties agreed to stay the case in an effort to settle the matter. As part of that process, the USAF agreed to provide Mr. Barnick with the in-person physical examination he had initially requested to determine whether he had been given a proper disability rating of ten percent by the FPEB in 2003.

### A. The 2006 Physical Examination

The USAF sent the matter to the AFBCMR, which in turn arranged for one of its medical consultants to perform the physical examination. The AFBCMR consultant, Dr. Gregory T. Rehe, reviewed the results of the physical examination performed on June 30, 2006 by Dr. Eric Potwardowski, and, in a December 14, 2006 memorandum to the AFBCMR, concluded that the 2003 FPEB decision was appropriate and that no change to Mr. Barnick's records was necessary. The memorandum states, in relevant part, as follows:

1. The [plaintiff] has a medical history of chronic low back pain associated with degenerative disc disease of the lumbar spine following a May 1993 auto accident aggravated by military flying duties with ongoing symptoms for which he exercises regularly to control the pain (reported jogs about 2 days a week; able to do 4 miles in 45 minutes; and stretches on alternate days).

2. Examination of the lower back (lumbosacral spine) was reported to show normal appearance without deformity, tenderness of muscle spasm.

3. Motor examination of the lower extremities was reported as normal and included absence of muscle atrophy.... The posture, gait and station were recorded as normal. There was reported "subjective decreased sensation to cold over the lateral lower legs (peroneal region)."

4. The examiner reviewed available magnetic resonance imaging reports documenting multilevel disc degeneration but no neural impingement (consistent with recorded physical examination findings).

5. During this examination the [plaintiff] also complained of right shoulder pain and cubital tunnel syndrome (compression of the ulnar nerve at the elbow). The [plaintiff] attributed his shoulder pain to all the softball he played and asserted that he developed cubital tunnel syndrome of the right arm that was caused by aircraft vibrations. The symptoms of cubital tunnel syndrome were currently increased by running and occasionally awakened him. On examination of the right shoulder there was tenderness on palpation at the bicipital groove (anterior aspect of shoulder where the biceps tendon lies). The shoulder range of motion was normal without muscle atrophy, weakness or observed discomfort. Examination of the right elbow and cubital tunnel region was unremarkable; there was no tenderness to percussion of the cubital tunnel and no muscle wasting in the right forearm or hand.

6. An orthopedic examination close to the time of his retirement from the [USAFR] is found in case file and is used for comparison.

7. The retirement medical examination dated June 30, 2006 performed 8 years after retirement (January 1998) documented the applicant's history of

evidence of the expenses he incurred in order for his reimbursement claim to be considered. The court allowed Mr. Barnick forty-five days to obtain any documentation related to the medical expenses he incurred from 1993 to 1998, and Mr. Barnick submitted evidence of those expenses to the court and to the government on January 31,

2008. During a February 20, 2008 status conference, the government indicated that it would submit Mr. Barnick's medical bills for 1993 through 1998 to the Defense Enrollment Eligibility Reporting System ("DEERS") for its consideration of Mr. Barnick's reimbursement claim.

chronic low back pain since May 1993. The current examination reflected subjective report of pain and activity level approximately the same as previous examinations. Similar to previous examinations, objective findings on physical examination showed no muscle weakness, no loss of reflexes and no radicular signs with examination maneuvers. Range of motion was slightly worse in flexion compared to previous examinations. Although several years later, the evidence of the examination shows relative stability of the chronic back condition over time and is consistent with examinations while in military service and with an orthopedic examination conducted five months following his retirement. *Taking into account the gradual worsening since 1998, the evidence of the recent examination supports the ratings previously adjudicated by the Physical Evaluation Boards. Interestingly to note, the objective findings of the current examination using current [Veterans Administration Schedule for Rating Disabilities ("VASRD")] guidelines would support no more than a 20 percent rating. Taking into consideration the natural progression over the eight years since retirement, the ten percent rating adjudicated by the PEBs is supported by the evidence of the record including the recent examination.*

8. *The objective physical examination findings of the shoulder and elbow/cubital tunnel documented on June 30, 2006 combined with the evidence of the medical records contemporaneous with his military service do not support a conclusion that these conditions were unfitting for military service and warranted disability compensation.*

9. *The reviewer concludes that the preponderance of evidence of the record including the evidence on the June 30, 2006 examination does not support change of records to show disability retirement.*

(emphasis added).

Mr. Barnick was given a copy of Dr. Rehe's memorandum and an opportunity to comment on the results of the physical examination. On March 2, 2007, Mr. Barnick submitted a list of objections to the AFBCMR. Among Mr. Barnick's objections was the fact that the physical examination was biased because it was performed by a medical examiner who was inappropriately influenced by the USAF and because the memorandum was prepared by a consultant affiliated with the AFBCMR. Mr. Barnick also challenged the quality and thoroughness of the examination. Mr. Barnick, however, did not submit any independent medical evidence to support his contentions at that time.

## B. AFBCMR Decision III (2007)

On April 30, 2007, after reviewing Mr. Barnick's objections to Dr. Rehe's memorandum, the AFBCMR issued its third and final decision, in which it held:

1. After a review of the evidence of record, previous considerations of this case, and the additional evidence provided, it is our opinion that the previous decision regarding this matter should not be disturbed. At the direction of the AFBCMR, DES officials were tasked to determine whether or not the applicant's physical condition as it existed in January 1998 warranted processing through the DES. As a result, the determination was made that his condition as it existed at the time rendered him unfit to perform the duties of his office, rank and grade and that the degree of his impairment warranted a compensable percentage of 10% in accordance with Department of Veterans Affairs diagnostic guidelines. The military disability evaluation system can by law under Title 10, only offer compensation for service incurred or aggravated injuries which specifically rendered a member unfit for continued service, were the cause for termination of their career, and only for the degree of impairment present at the time of separation and not based on subsequent possibilities even though the condition may become better or worse. Noting this and taking into

consideration the earlier determination of DES officials along with the additional physical examination data provided, we agree with the opinion and recommendation of the AFBCMR Medical Consultant. *Therefore, it is our determination that substantive evidence has not been presented which would justify a compensable rating higher than the assigned rating of 10%.* Accordingly, in absence of evidence to the contrary we find no basis upon which to recommend further corrective action in this case.

2. The applicant's case is adequately documented and it has not been shown that a personal appearance with or without counsel will materially add to our understanding of the issue involved. Therefore, the request for a hearing is not favorably considered.

(emphasis added).

On May 21, 2007, the government moved to supplement the administrative record with the documents attached to the AFBCMR's 2007 decision and renewed its motion for judgment on the administrative record. Mr. Barnick filed objections to the motion to supplement, arguing that the examination was not adequate and that the government failed to follow proper procedures.[5] Mr. Barnick also included a medical report from his own physician. The court found that Mr. Barnick's procedural objections were not sufficient to bar supplementation. On July 26, 2007, the court granted the government's motion to supplement the record and set a deadline for Mr. Barnick's response to the government's renewed motion to dismiss or in the alternative for judgment on the administrative record. Mr. Barnick filed his response on August 27, 2007. Oral argument was held on December 12, 2007.

## DISCUSSION

**I. This Court Lacks Subject Matter Jurisdiction Over The Plaintiff's Tort, Prejudgment Interest, and Veteran's Benefit Claims.**

The government has moved to dismiss several of Mr. Barnick's claims under RCFC 12(b)(1) for lack of subject matter jurisdiction. The government contends that Mr. Barnick's claim for monetary relief based on "severe emotional distress" sounds in tort and is outside the jurisdiction of this court. The government also asserts that the claim for "the loss of use of money" is a claim for prejudgment interest which is not authorized in military pay cases. Finally, the government contends that Mr. Barnick's claims regarding the loss of "veteran's pension funds and other veteran's benefits" involve decisions which require consideration by the DVA and which may not be heard in this court.

In considering a motion under RCFC 12(b)(1) to dismiss for lack of subject matter jurisdiction, the court is generally "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995) (citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). The ultimate burden, however, is on the plaintiff to prove that the court has jurisdiction to hear his claims. *See, e.g., Rocovich v. United States,*

---

**5.** At oral argument on December 12, 2007, Mr. Barnick's counsel contended that the physical examination Mr. Barnick was given in 2006 was not complete, in part because the examining physician did not have Mr. Barnick's complete medical records, including information about additional problems with Mr. Barnick's condition "that would have contributed to his overall disability profile." Tr. of Oral Argument at 49:20–21. Mr. Barnick's counsel stated that "the missing records from the medical record may well have documentation necessary for [the physician] to have evaluated [Mr. Barnick's other injuries]." Tr. of Oral Argument at 50:23–25. The court allowed Mr. Barnick forty-five days in which to produce the documents allegedly missing from the medical record that the physician was given prior to Mr. Barnick's physical examination. On January 31, 2008, Mr. Barnick submitted four documents to the court: (1) a letter from Dr. John W. Skubic dated 12/8/94 regarding Mr. Barnick's back injury; (2) a letter from Dr. Skubic dated 6/8/95 regarding Mr. Barnick's back injury; (3) medical notes about the plaintiff's condition dated 7/16/93; and (4) medical notes about the plaintiff's condition dated 10/14/94. The documents submitted by Mr. Barnick related solely to Mr. Barnick's back injury and did not contain information regarding any other medical conditions from which Mr. Barnick allegedly suffered. *See infra,* n. 12.

933 F.2d 991, 993 (Fed.Cir.1991) ("A party seeking the exercise of jurisdiction in its favor has the burden of establishing that such jurisdiction exists."). The Court of Federal Claims has jurisdiction, under the Tucker Act, 28 U.S.C. § 1491 (2000), to hear claims for money damages against the United States. However, the Tucker Act simply confers jurisdiction on this court; a plaintiff must also identify a separate money-mandating statute upon which to base a claim for damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed.Cir.2004); *Tippett v. United States*, 185 F.3d 1250, 1254 (Fed.Cir. 1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." (quoting *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir.1998))). In determining jurisdiction, this court must ask "only whether the plaintiff is within the class of plaintiffs entitled to recover under the statute if the elements of a cause of action are established." *Greenlee County v. United States*, 487 F.3d 871, 876 (Fed.Cir.2007). Here, Mr. Barnick has not met his burden with respect to the above-referenced claims.

▆ First, Mr. Barnick's claims sounding in tort must be dismissed. It is beyond question that this court does not have jurisdiction over claims sounding in tort. The Tucker Act expressly limits the Court of Federal Claims' jurisdiction to "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases *not sounding in tort*." 28 U.S.C. § 1491(a)(1) (2000) (emphasis added). *See also Keene Corp. v. United States*, 508 U.S. 200, 214, 113

S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Shearin v. United States*, 992 F.2d 1195, 1197 (Fed. Cir.1993) ("It is well settled that the United States Court of Federal Claims lacks jurisdiction to entertain tort claims."); *Edelmann v. United States*, 76 Fed.Cl. 376, 380 (2007). Therefore, Mr. Barnick's claim for severe emotional distress, which sounds in tort, must be dismissed.[6]

▆ Second, Mr. Barnick's various claims for the "loss of use of money" appear to be claims for prejudgment interest that must be dismissed on the grounds that there is no right to prejudgment interest in military pay cases. *See Ruizgarcia v. United States*, 54 Fed.Cl. 41, 45–46 (2002) (holding that without an express statute or contract authorizing prejudgment interest in military pay cases, interest is not allowed (citing *Ulmet v. United States*, 19 Cl.Ct. 527, 537 (1990))). Mr. Barnick has not identified any money-mandating statute or contractual obligation that authorizes a claim for prejudgment interest in the circumstances presented in this case. Accordingly, his claims for the "loss of use of money" must be dismissed.[7]

▆ Finally, Mr. Barnick's claims involving "DVA pension funds" and other "DVA benefits" must be dismissed on the grounds that this court does not have jurisdiction to entertain claims relating to veterans' pension funds or benefits. *See, e.g., Collins v. United States*, 47 Fed.Cl. 196, 198 (2000); *Davis v. United States*, 36 Fed.Cl. 556, 559 (1996). As the government correctly argues, claims regarding entitlement to veterans' benefits must be presented to the VA. 38 U.S.C. § 511(a) (2000) ("The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans.").[8] VA decisions may then

---

6. At oral argument, Mr. Barnick conceded that this court does not have jurisdiction over his claims sounding in tort. *See* Tr. of Oral Argument at 7:23–25 and 8:1–5.

7. At oral argument, Mr. Barnick conceded that this court does not have jurisdiction over his claims for prejudgment interest. *See* Tr. of Oral Argument at 7:23–25 and 8:1–5.

8. At oral argument, Mr. Barnick's counsel represented that Mr. Barnick had attempted to present his claims to the VA, but that he was missing some documents that would be necessary to pursue his claims for veterans' benefits. Mr. Barnick was given forty-five days to compile a list of the documents he believed were necessary to his VA claim, and Mr. Barnick submitted that list to the court and to the government on January 31, 2008. During the February 20, 2008 status con-

be reviewed by the Board of Veterans' Appeals, 38 U.S.C. § 7104(a) (2000), and subsequently by the Court of Appeals for Veterans Claims. 38 U.S.C. § 7252(a) (2000) ("The Court of Appeals for Veterans Claims shall have exclusive jurisdiction to review the decisions of the Board of Veterans' Appeals."). These statutory provisions preclude this court from considering Mr. Barnick's claims relating to veterans' disability pensions or other veterans' benefits. Accordingly, these claims must also be dismissed.

## II. The Government is Entitled To Judgment on the Administrative Record.

The government seeks to dismiss most of the plaintiff's remaining claims on the grounds that he has failed to identify a money-mandating claim. According to the government, Mr. Barnick has failed to state a money-mandating claim for military pay, reserve entitlement points, medical expenses, and incapacitation pay. All of the claims brought by Mr. Barnick were also considered by the AFBCMR. In some instances, the AFBCMR rejected the claims on legal grounds. In other instances, the AFBCMR granted portions of the plaintiff's claims. However, the plaintiff asserts in his complaint that he has never received the full payment to which he believes he is entitled.

■ Because the plaintiff sought relief from the AFBCMR, he is bound by its decisions unless he can establish that the decisions were "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Lewis v. United States,* 458 F.3d 1372, 1376 (Fed.Cir.2006); *see also Myers v. United States,* 50 Fed.Cl. 674 (2001). Once a service member pursues review before a board of corrections, he or she is bound by the board's decision and cannot obtain relief unless the board's decision can be reversed under the standard set forth above. *See Mercer v. United States,* 52 Fed.Cl. 718, 723 (2002) ("Once a plaintiff has sought relief from the Correction Board, such plaintiff is

bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due." (quoting *Sanders v. United States,* 219 Ct.Cl. 285, 298, 594 F.2d 804 (Ct.Cl.1979))). Therefore, the court will not separately consider the plaintiff's money claims but will turn instead to plaintiff's objections to the AFBCMR's decisions.[9]

### A. The Plaintiff's Claims Relating to Military Status and Military Pay

■ One of Mr. Barnick's core contentions is that the AFBCMR acted contrary to law when it failed to provide him with additional monetary relief after it ordered correction of his military record. He argues that the severance pay he received following the ten percent disability determination in 2003 and the incapacitation pay he received for the period between 1993 and 1998 were not sufficient "to make him whole" and that the AFBCMR should have authorized additional pay and benefits. Mr. Barnick contends that "with the rescinding of his erroneous 1998 retirement [based on the erroneous LOD determination], the record of separation is clear and opens possibilities for his placement on active duty, pending the completion of his disability evaluation, which actually occurred in 2003, but was back-dated to January 25, 1998." Pl.'s Opp. at 12. In the alternative, Mr. Barnick argues that "he could also be placed [in an active] reserve status, which would entitle him to incapacitation pay and medical benefits [through 2003]." *Id.*

The government argues that the AFBCMR correctly decided not to extend pay and benefits to Mr. Barnick for any period beyond 1998. The government states

---

ference, Mr. Barnick's counsel indicated that he had obtained some documents from the government, and that Mr. Barnick intended to file a claim with the VA in the near future.

9. If the plaintiff cannot show that the AFBCMR decision was arbitrary, capricious or not in accordance with law, he cannot establish a money-mandating claim. *See Metz v. United States,* 466 F.3d 991, 998 (Fed.Cir.2006).

that there was no legal basis for placing Mr. Barnick on active duty pending the resolution of either the LOD determination or the disability determination. As such, the government asserts that the AFBCMR's decision was neither arbitrary nor capricious, was in accordance with law, and must be affirmed.

The court agrees with the government. First, under the applicable Department of Defense ("DoD") and USAF regulations, Mr. Barnick was not entitled to remain on active duty pending appeal and final resolution of the LOD or disability determinations. Under Department of Defense Instructions ("DoDI") 1241.1 and 1241.2, special rules apply to a reserve member who was on active duty for a period of *thirty days or less*. It is not disputed that Mr. Barnick was on active duty for no more than thirty days. As set forth in DoDI 1241.1, Paragraph 4.4.2, "[a] Reserve component member on active duty for a period of 30 days or less *may be* continued on active duty while the member is being treated for, or recovering from, an injury, illness or disease incurred or aggravated in the line of duty." (emphasis added). However, Air Force Instruction 36–3212, "Physical Evaluation for Retention, Retirement, and Separation" (September 30, 1999) ("AFI 36–3212"), makes plain that a reservist is not entitled to remain on active duty pending the outcome of a disability determination. AFI 36–3212, Paragraph 8.6.1 states that a reservist "who incurs a disability while performing [active duty] on orders for 30 days or less is not ordered or continued on [active duty] past the date specified solely for processing under this instruction." Because Mr. Barnick's back injury was aggravated while serving on active duty orders that were *for less than 30 days, see* Pl.'s Opp. at 4, he was not entitled under the applicable regulations to remain on active duty pending a resolution of the LOD or disability determinations. The applicable regulations provide that a reservist may be retained on active duty to treat injuries sustained while on duty but that a reservist may not be placed on active

duty "solely for processing under this instruction." AFI 36–3212. Here, the administrative record contains no evidence to suggest that Mr. Barnick needed to be retained on active duty to "treat" his aggravated back injury. Rather, Mr. Barnick argues he was entitled to remain on active duty for purposes of processing his claim. AFI 36–3212 makes clear that there is no right to remain on active duty "solely" to process a claim. Therefore, there was no basis for the USAF to keep Mr. Barnick on active duty while his LOD and disability determinations were pending.

Mr. Barnick's reliance on 37 U.S.C. § 204 (2001) to suggest that all military members are entitled to pay and benefits until they are properly separated from duty is misplaced. 37 U.S.C. § 204(a)(1) applies only to members of the armed services who are on active duty. As discussed above, Mr. Barnick was not on "active duty." Rather, Mr. Barnick was a "part-time reservist." As such, he was only entitled to pay and benefits for the period of duty he actually performed. *See Palmer v. United States*, 168 F.3d 1310, 1313–14 (Fed.Cir.1999) ("The consequence of this difference in pay entitlement between full-time active duty personnel and those serving part-time reserve duty is that a member who is serving in part-time reserve duty ... has no lawful pay claim against the United States for unattended drills or for unperformed training duty.").[10] Because Mr. Barnick was not on active duty at any time after 1998, he is not entitled to pay for that period of time. In sum, the AFBCMR correctly concluded that Mr. Barnick was not entitled to pay and benefits for the period of time during which his LOD and disability determinations were being reconsidered.

Furthermore, Mr. Barnick's objection to the method by which the AFBCMR amended his records to place him in the position he would have been had the USAF acted properly in designating his disability as ILOD in 1998 is not supported. By correcting Mr. Barnick's record to reflect his disability and

---

10. Mr. Barnick's claims relating to a military retirement and retirement points are also without merit. When Mr. Barnick made his election to accept severance pay, in lieu of retirement pay, he waived any right to a military retirement. *See Christos v. United States*, 300 F.3d 1381, 1384 (Fed.Cir.2002).

right to incapacitation pay and medical expenses through 1998, the AFBCMR placed Mr. Barnick in the same position he would have been if the erroneous LOD determination had not been made. The AFBCMR was not required to do anything else. *See Kimmel v. United States,* 196 Ct.Cl. 579, 1971 WL 17833 at *9 (1971) ("The injustice was removed by placing plaintiff in the same position he would have been had no error been made.").

## B. The Plaintiff's Claims Relating to the Disability Determination

Mr. Barnick also challenges the AFBCMR's 2007 decision to affirm the ten percent disability rating he received from the FPEB. Mr. Barnick contends that, had his medical records been complete and had he been given a proper physical at the time of his initial discharge in 1998, he would have received a higher disability rating and would be entitled to more than the severance pay he received. He argues that the actions of the MEB, the IPEB, and the FPEB were all inadequate. He further argues that the physical examination he received in 2006 and the subsequent analysis provided by a AFBCMR medical consultant were neither proper nor supported by the medical evidence. He asks that the AFBCMR's 2007 decision be set aside.

In support of his request, Mr. Barnick attaches a letter from Albert D. Janerich, M.D., to Mr. Barnick's counsel, which was written after the final AFBCMR decision in April 2007. In the letter, Dr. Janerich opines, based on his examination and treatment of Mr. Barnick, that Mr. Barnick should have received a forty percent disability rating for his back injury and that Mr. Barnick should have been given an eighty percent disability rating for carpal tunnel syndrome, which Mr. Barnick claims was caused by in-flight aircraft vibrations. Dr. Janerich states that Mr. Barnick's carpal tunnel syndrome should have precluded him from participating in military duties in 1998.

The government contends that Mr. Barnick's objections to the actions of the AFBCMR with regard to its reconsideration of Mr. Barnick's disability rating are not supported. The government argues that the AFBCMR's reliance on its own medical consultant was lawful and proper and that the final decision of the AFBCMR to uphold the ten percent disability rating is well-supported and must be affirmed. The government contends that there is no record evidence to support Mr. Barnick's claim for a disability based on carpal tunnel syndrome. The court agrees with the government.

 First, contrary to Mr. Barnick's assertions, the AFBCMR did not err in deciding to use its own medical consultant to analyze the results of Mr. Barnick's physical examination. Mr. Barnick's principal complaint regarding his disability rating before the 2006 physical was that he had been denied an in-person physical examination prior to his retirement in 1998. When the USAF agreed to provide him with a physical examination, as part of an effort to resolve the case, it turned to the AFBCMR. Mr. Barnick's argument that this was contrary to USAF procedures is not correct. It is well-settled that the AFBCMR is able to make a disability determination in the first instance. *See, e.g., Sawyer v. United States,* 930 F.2d 1577, 1581 (Fed.Cir.1991) (holding that "in disability cases either the review boards or the correction board is competent to make a disability determination in the first instance"). In connection with this authority, it is equally well-settled that the AFBCMR may rely upon its own medical consultants for assistance in making such determinations. *See, e.g., Chambers v. United States,* 417 F.3d 1218, 1228 (Fed.Cir.2005) (citing 10 U.S.C. § 1555 (2000)). Indeed, as the court noted in *Chambers,* review boards may even rely on "off-the-record" conversations with their medical advisors in making disability determinations. *Id.*[11] For all of these reasons, Mr. Barnick's procedural objections to the physical examination he received in 2006 are without merit.

 Second, the court finds that the AFBCMR's final decision affirming the ten

---

11. In view of the holding in *Chambers,* Mr. Barnick's objections to government counsel's conversation with Dr. Rehe to discuss the purpose of the physical examination are not warranted.

percent disability determination has substantial evidentiary support in the record and therefore must be affirmed. The AFBCMR summarized the Medical Consultant's evaluation as follows:

> The BCMR Medical Consultant recommends no change in the applicant's records. The Medical Consultant states the medical examination performed eight years after retirement documented a history of chronic low back pain since May 1993. The examination reflected subjective report of pain and activity level approximately the same as previous examinations. Similar to previous examinations, objective findings on physical examination showed no muscle weakness, no loss of reflexes and no radicular signs with examination maneuvers. Range of motion was slightly worse in flexion compared to previous examinations. Evidence of the examination shows relative stability of the chronic back condition over time and is consistent with examinations while in military service and with an orthopedic examination conducted five months following retirement. Taking into account the gradual worsening since 1998, the evidence of the recent examination supports no more than a 20 percent rating. Taking into consideration the natural progression over the eight years since retirement, the 10 percent rating adjudicated by the PEB is supported by the evidence of record including the recent examination.

Second Addendum to Record of Proceedings (April 30, 2007). This conclusion faithfully summarizes Dr. Rehe's assessment. Dr. Rehe noted that the 2006 physical examination reflected approximately the same level of back pain that was reported by Mr. Barnick in reports dating back to 1998. Dr. Rehe explained that the evidence demonstrated relative stability of the chronic back condition over time consistent with examinations around the time of Mr. Barnick's retirement in 1998. Although Dr. Rehe noted a slight worsening of Mr. Barnick's condition, Dr. Rehe stated that even if the disability decision were being made in 2006, more than ten years after Mr. Barnick's accident, the plaintiff's back condition would not provide for more than a twenty percent disability rating, which would not qualify Mr. Barnick for a disability pension.[12]

With respect to Mr. Barnick's complaints of carpal tunnel syndrome, Dr. Rehe stated that medical evidence contemporaneous with Mr. Barnick's military service would not support a conclusion that the condition was unfitting for military service and warranted a disability rating. First, at the AFBCMR examination, Mr. Barnick complained of "cubital tunnel syndrome," relating to his elbow, not carpal tunnel syndrome, which relates to the wrist. Second, Dr. Rehe noted that "examination of the right elbow and cubital tunnel region was unremarkable; there was no tenderness to percussion of the cubital tunnel and no muscle wasting in the right forearm or hand." Dr. Rehe noted that if a serious condition existed at the time of Mr. Barnick's retirement in 1998, further deterioration would have been present in 2006. Dr. Rehe further noted that there were no medical documents referring to cubital tunnel syndrome in the file until the June 30, 2006 examination.[13]

In view of the foregoing, the court finds that the AFBCMR's 2006 decision denying Mr. Barnick's disability rating. Dr. Rehe was charged with evaluating Mr. Barnick's back injury and assessing whether Mr. Barnick's disability rating, made in 1998, was appropriate. The additional documents submitted by Mr. Barnick did not provide any additional information not already available to Dr. Rehe, and did not refer to any other problems with Mr. Barnick's physical condition that would have contributed to his overall disability profile. Accordingly, the court finds that the medical records presented to Dr. Rehe and to the AFBCMR in 2006 were sufficient to allow for a proper physical examination and evaluation.

---

12. To obtain a disability retirement, Mr. Barnick would have to have been given a disability rating of thirty percent or higher. *See* 10 U.S.C. § 1203 (1996).

13. As discussed *supra*, n. 5, the plaintiff contended at oral argument that his complete medical record was not presented to Dr. Rehe for review. On January 31, 2008, Mr. Barnick submitted four additional documents that he contended were missing from his medical record. However, each of these documents apparently relates to Mr. Barnick's back injury, and none of the documents contains a reference to either cubital tunnel syndrome or carpal tunnel syndrome, or to any other condition that could have impacted

560

any change to Mr. Barnick's disability determination is supported by substantial evidence. Mr. Barnick did not submit any medical evidence to the AFBCMR to contradict Dr. Rehe's medical findings. The letter from Dr. Janerich was not presented to the AFBCMR and is therefore outside the scope of this court's review. *See Chambers,* 417 F.3d at 1228. The court will not consider materials that were not presented to a review board. *See, e.g., Metz,* 466 F.3d at 999 ("The failure to raise an issue at the administrative level waives the right to appellate review of that issue." (quoting *Sw. Bell Tel. Co. v. Pub. Util. Comm'n,* 208 F.3d 475, 487 (5th Cir.2000))); *Pence v. United States,* 52 Fed.Cl. 643, 645 (2002).

Moreover, the fact that Mr. Barnick's physician holds a different view from Dr. Rehe does not undermine the AFBCMR's conclusions. Dr. Rehe conducted a thorough analysis and concluded that Mr. Barnick had been given a proper disability rating in 1998. The evaluation may have been difficult to perform; nonetheless, Dr. Rehe fully supported his conclusions with facts and opinions based on a physician's first-hand observations. There is no basis for rejecting his opinion and therefore no basis for overturning the AFBCMR's final disability determination. Because the AFBCMR's findings are plausible in light of the record as a whole, the court may not reverse them. *Heisig v. United States,* 719 F.2d 1153, 1157 (Fed.Cir.1983) (holding that "the standard of review does not require re-weighing of the evidence, but a determination of whether the *conclusion being reviewed* is supported by substantial evidence") (emphasis in the original).

### CONCLUSION

For all of the foregoing reasons, the government's motion to dismiss and for judgment on the administrative record is **GRANTED.** The clerk is directed to enter judgment accordingly. Each party to bear its own costs.

**IT IS SO ORDERED.**