# United States Court of Appeals for the Federal Circuit

2008-5074

RONALD S. BARNICK,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Louis P. Font, Font & Glazer, Brookline, Massachusetts, argued for plaintiff-appellant.

Armando A. Rodriguez-Feo, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director. Of counsel on the brief was Jason S. Osborne, General Litigation Division, Air Force Legal Operation Agency, of Arlington, Virginia. Of counsel was David F. Brash.

Appealed from: United States Court of Federal Claims

Judge Nancy B. Firestone

# United States Court of Appeals for the Federal Circuit

2008-5074

RONALD S. BARNICK,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 04-CV-1676, Judge Nancy B. Firestone.

_____

DECIDED:  January 8, 2010

_____

Before GAJARSA, DYK, and MOORE, Circuit Judges.

DYK, Circuit Judge.

Ronald S. Barnick ("Barnick") appeals from a final judgment of the United States Court of Federal Claims.  The court granted judgment on the administrative record in favor of the government, upholding the decision of the Air Force Board for Correction of Military Records ("AFBCMR" or "Board") denying Barnick additional back pay and disability benefits.  See Barnick v. United States, 80 Fed. Cl. 545 (2008).  We affirm.

## BACKGROUND

Following nearly a decade of service in the United States Air Force during the 1970s, Barnick resigned from the Regular Air Force in 1981 and was appointed an

officer in the Air Force Reserve. His service in the Air Force Reserve required him to perform limited periods of active duty service each year, never longer than thirty days. On May 30, 1993, Barnick injured his back in an off-duty automobile accident. He was scheduled for a period of active duty service in March 1994, and, despite his back injury, was cleared to perform flight duties. Barnick aggravated his back injury while on an active duty training mission in Panama from March 3–11, 1994. As a result, the Air Force removed Barnick from flying status and a few months later disqualified him from resuming flying duties. Barnick was not called to active duty after March 1994, and does not claim that he was fit for active duty after that time.

Where a service member is injured in the line of duty, he may claim incapacitation pay—active duty pay during a period of physical incapacitation—and also may claim disability payments, including disability retirement, if the disability is permanent. A claim for disability is first considered by a Medical Evaluation Board ("MEB"), which reviews the individual's medical records to determine the nature of the disability. Then, if the disability is found to be permanent, the issue of disability retirement is referred to a Physical Evaluation Board ("PEB"), which provides a formal fitness and disability determination. If the PEB finds the service member unfit for duty and permanently disabled, it assigns a disability rating. If the rating is 30% or more, the PEB can recommend disability retirement. If the rating is less than 30%, the PEB can recommend discharge with the service member's having the option to receive a lump-sum disability severance payment. See 10 U.S.C. §§ 1201, 1203. See generally Walls v. United States, 582 F.3d 1358, 1365–66 (Fed. Cir. 2009).

On May 9, 1995, Barnick requested a line of duty ("LOD") determination with respect to his injury so that he could receive incapacitation pay and disability retirement. On June 14, 1996, the officer appointed by Barnick's commanding officer to conduct the LOD investigation returned a preliminary finding that Barnick's injury was incurred in the line of duty ("ILOD"). However, a legal review of the preliminary LOD finding by the Air Force Judge Advocate ("JA") in September 1996 recommended that the service classify Barnick's injury as not in the line of duty ("NLOD") because Barnick's injury was solely the result of the automobile accident. On December 31, 1996, the Air Force finalized its decision designating Barnick's injury NLOD, with a further finding that the injury was due to Barnick's own misconduct.[1]

On February 5, 1997, Barnick wrote a letter to his commanding officer objecting to the NLOD-due-to-own-misconduct finding and seeking the convening of a MEB, evidently for the purpose of securing disability retirement on the ground that he was physically disabled. See Air Force Instruction 44-157, ¶ 1.1 ("Air Force Reserve members must be entitled to disability processing to undergo MEB processing."). The request was not granted. The Air Force Reserve Command notified Barnick on October 1, 1997, that he had been medically disqualified from further military service. In response, Barnick continued to challenge his NLOD finding and reiterated his request for an MEB. That request was still not granted, and so Barnick elected under protest to complete a retirement application. He was transferred to the Retired Reserve on January 25, 1998.

---

[1] The source of the misconduct finding is unclear, as the JA explicitly noted that Barnick's automobile accident was not caused by his own misconduct.

For many years thereafter, Barnick sought redress before the Air Force Board for Correction of Military Records,[2] requesting that the Air Force correct his LOD determination. He argued that he was entitled to receive incapacitation pay until an MEB was convened to make a disability determination, and that thereafter he was entitled to receive disability retirement benefits. On February 6, 2001, the Board issued its first of three decisions in Barnick's case. It found that "[s]ufficient relevant evidence" had been presented to demonstrate that "probable error" had been committed in making Barnick's NLOD determination and that Barnick's flying duties aggravated his back injury. J.A. 68. Therefore the Board recommended that all relevant records be amended to reflect an ILOD finding for Barnick's injury. The Board further recommended a review of Barnick's medical records to determine if his condition as of January 25, 1998, had disqualified him from continued active duty. Finally, the Board informed Barnick that he would be eligible for incapacitation pay and reimbursement of medical expenses if he submitted the proper paperwork.

The Air Force convened an MEB on September 5, 2002, which reviewed Barnick's medical records, diagnosed him with low back pain, and referred the case to an Informal Physical Evaluation Board ("IPEB"). The IPEB on October 15, 2002, also determined based on Barnick's prior medical records that on January 25, 1998, Barnick suffered from chronic low back pain, and concluded that he was unfit for duty because of physical disability. The IPEB recommended that Barnick receive severance pay and a 10% disability rating. On January 9, 2003, the Formal Physical Evaluation Board

---

[2] The AFBCMR operates on behalf of the Secretary of the Air Force, see 32 C.F.R. § 865.1, under whose authority the Board may correct military records when necessary to correct an error or remove an injustice, see 10 U.S.C. § 1552(a)(1).

("FPEB") affirmed all of the IPEB's findings. Thus, Barnick was awarded a disability rating of 10%. Shortly thereafter, Barnick received a total of $156,470.40 in disability severance pay, representing the amount of disability payments that he should have received in 1998.[3]

Barnick, not satisfied with the FPEB results, again petitioned the AFBCMR. On January 21, 2004, the Board issued its second decision in Barnick's case. The Board concluded that the proper course was to treat Barnick's case as though he had been processed in 1998. It therefore recommended that Barnick's records be corrected to show that on January 25, 1998, his name was not placed on the Retired Reserve list, but instead he was honorably discharged by reason of physical disability with a compensable rating of 10%. The Board found that Barnick had not shown that he deserved a disability rating greater than 10%. As a result, the Air Force amended Barnick's records to reflect that he was discharged on January 25, 1998. In addition, for the first time the Board addressed and rejected Barnick's claim that he was entitled to active duty pay and allowances for the period from January 25, 1998, to the present on the theory that he was entitled to such pay and allowances until he was properly discharged.

Still unsatisfied, on November 15, 2004, Barnick filed a complaint in the Court of Federal Claims. In his complaint, Barnick asserted various counts seeking additional active duty or incapacitation pay and benefits, increased disability or retirement pay,

---

[3]    Barnick had been given the option to either receive regular retirement pay upon turning age sixty under 10 U.S.C. ch. 1223, or a lump-sum disability severance payment under 10 U.S.C. § 1203. He chose the latter. Because Barnick's disability rating was less than 30%, he was not eligible for monthly disability retirement payments upon separation from the service under 10 U.S.C § 1201.

2008-5074                          5

expungement of the NLOD finding from his records, and reimbursement of medical expenses. The government moved for judgment on the administrative record. The parties agreed, however, to stay the case in an effort to settle the matter. On January 18, 2005, the Air Force awarded Barnick $117,646.35 in incapacitation pay covering the period from his initial injury in 1993 through his January 25, 1998, discharge.

The Air Force also agreed to provide Barnick with a physical examination to determine whether his disability had been properly rated. On June 30, 2006, Barnick was examined by an Air Force medical officer. The results of that examination were subsequently reviewed by an AFBCMR medical consultant, who concluded in a report dated December 14, 2006, that the findings of the 2003 PEB were appropriate and that no change to Barnick's disability rating was necessary. On April 30, 2007, the AFBCMR issued its third and final decision in Barnick's case. Based on the medical consultant's conclusions, the Board declined to alter any of its previous decisions and continued Barnick's disability rating at 10%. Following the Board's decision, the government renewed its motion for judgment on the administrative record as supplemented by the record of the third AFBCMR proceeding.

On February 27, 2008, the Court of Federal Claims granted the government's motion for judgment on the administrative record, holding that the AFBCMR decisions were not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Barnick, 80 Fed. Cl. at 560. In doing so, the court rejected Barnick's claims for additional military pay, his claims for an increased disability rating, and his claims for medical expenses. Id. at 551 n.4, 556–60. The court also rejected Barnick's claim that

he was entitled to further correction of his military records. Id. at 557–58. Barnick appealed. We have jurisdiction over this appeal pursuant to 28 U.S.C § 1295(a)(3).

## DISCUSSION

We review a decision of the Court of Federal Claims granting or denying a motion for judgment on the administrative record without deference. Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005). As such, we apply the same standard of review as the trial court, and we will not disturb the decision of the AFBCMR unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. Id. We consider each of Barnick's theories separately.

## I Claims for Back Pay

Barnick argues that he was entitled to additional military pay because he should have been retained on active duty pending the completion of a proper disability evaluation by an MEB. His theory is that such a proper evaluation still has not been completed. Barnick argues two theories for additional pay: incapacitation pay under 37 U.S.C. § 204(g), and constructive active duty pay.

## A Incapacitation Pay Under 37 U.S.C. § 204(g)

Barnick argues that the AFBCMR and the Court of Federal Claims erred in failing to award him additional incapacitation pay for the period from 1998 to the present pursuant to 37 U.S.C. § 204(g). Barnick has already received incapacitation pay for the period from the date of his injury to January 25, 1998, in the amount of $117,646.35. He seeks additional pay for subsequent periods, arguing that the Air Force's procedures were flawed; that he was not given a "full and fair" disability hearing as required by 10

U.S.C. § 1214;[4] and that he was accordingly illegally separated from the service. Even assuming that Barnick did not receive a proper evaluation until after 1998, we reject Barnick's claim that the statute mandates incapacitation pay over and above what he has already received.

The statute provides:

A member of a reserve component of a uniformed service is entitled to the pay and allowances provided by law or regulation for a member of a regular component of a uniformed service of corresponding grade and length of service whenever such member is physically disabled as the result of an injury, illness, or disease incurred or aggravated—
(A) in line of duty while performing active duty . . . .

37 U.S.C. § 204(g)(1). However, the statute providing incapacitation pay for reservists limits Barnick's incapacitation pay to a period of six months, or longer only at the discretion of the Secretary of the Air Force:

Pay and allowances may not be paid under subsection (g) or (h) for a period of more than six months. The Secretary concerned may extend such period in any case if the Secretary determines that it is in the interests of fairness and equity to do so.

37 U.S.C. § 204(i)(2). In Barnick's case, he already received incapacitation pay for a period well-exceeding the six months provided by the statute. The AFBCMR and the Air Force Military Personnel Division ("DPM"), acting under the authority of the Secretary of the Air Force, saw fit to extend Barnick's eligibility for incapacitation pay by nearly four years, from December 1993 to January 1998.

Barnick argues that he was entitled to receive payment for more than six months. Any additional incapacitation pay under 37 U.S.C. § 204(g) is wholly at the discretion of

---

[4] 10 U.S.C. § 1214 provides, "No member of the armed forces may be retired or separated for physical disability without a full and fair hearing if he demands it."

the Air Force, and courts lack jurisdiction over such a claim. The Court of Federal Claims has jurisdiction under the Tucker Act so long as there is a "fair inference" that a statute is money-mandating. United States v. White Mountain Apache Tribe, 537 U.S. 465, 473 (2003); Doe v. United States, 463 F.3d 1314, 1324 (Fed. Cir. 2006). However, "[a] statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group." Doe, 463 F.3d at 1324. Here, because § 204 incapacitation pay beyond the initial six-month period is wholly within the Secretary's discretion under § 204(i)(2), the Court of Federal Claims and this court lack subject matter jurisdiction over Barnick's claim for additional incapacitation pay.

Barnick also argues that certain Department of Defense and Air Force regulations improperly limit his entitlement to incapacitation pay by instructing that the service may not retain reservists on active duty solely for the processing of a disability claim if they were injured on active duty assignments of thirty days or less. See Air Force Instruction 36-3212, ¶ 8.6.1; Dep't of Def. Directive 1241.1, ¶ 4.4.2. However, neither the Air Force nor the Court of Federal Claims relied on these regulations to deny Barnick incapacitation pay under § 204(g).[5]

Because Barnick is not entitled to any additional incapacitation pay under 37 U.S.C. § 204(g), the Court of Federal Claims did not err in concluding that the

---

[5] Barnick argued before the Court of Federal Claims that the regulations themselves grant the right to remain on active duty while a disability claim is processed. See Dep't of Def. Directive 1241.1, ¶ 4.4.2. The court rejected this theory. See Barnick, 80 Fed. Cl. at 557. The applicable Air Force regulations make clear that Barnick was not entitled to remain on active duty while his disability claim was processed. See Air Force Instruction 36-3212, ¶ 8.6.1.

AFBCMR's failure to award additional incapacitation pay was not arbitrary, capricious, or contrary to law.

### B  Constructive Active Duty

Alternatively, Barnick contends that he is entitled to active duty pay from 1998 to the present under the constructive service doctrine on the theory that he was improperly transferred to the Retired Reserve in 1998 (which he characterizes as an improper discharge), that he did not receive a proper medical evaluation in 1998 in violation of 10 U.S.C. § 1214, and that he still has not received a proper evaluation for disability retirement.  Until that happens, he claims that he must be retained on active duty.

The government agrees that the NLOD determination was erroneous.  We may also assume, as Barnick alleges, that he was denied a full and fair hearing as to his medical condition in 1998 for disability retirement purposes, and that he was improperly forced to transfer to the Retired Reserve.  Barnick argues that cases applying the constructive service doctrine have held that where a service member is improperly discharged, he is entitled to receive active duty pay for the period from the improper discharge until the end of his original term of enlistment or he is discharged in the normal course following the correction of the improper discharge.  Thus, Barnick claims that the Board and the trial court erred in failing to apply the constructive service doctrine to extend his term of service beyond January 25, 1998.

In general, a reservist is entitled to active duty pay only for the period that he is actually on active duty.  Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999).  The Court of Federal Claims upheld the AFBCMR's decision to deny Barnick's request to be placed on constructive active duty status retroactive to January 1998, finding "no

legal basis for placing . . . Barnick on active duty pending the resolution of either the LOD determination or the disability determination." Barnick, 80 Fed. Cl. at 557.

Under the constructive service doctrine, "military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation." Christian v. United States, 337 F.3d 1338, 1347 (Fed. Cir. 2003). "[T]he constructive service doctrine is a 'legal fiction': 'as appellants have never been lawfully terminated from active duty, they are deemed to have served during the time of their illegal release.'" Id. (quoting Dilley v. Alexander, 627 F.2d 407, 413 (D.C. Cir. 1980)). The basic premise of the constructive service doctrine is to "return successful plaintiffs to the position that they would have occupied 'but for' their illegal release from duty." Dilley, 627 F.2d at 413.

Barnick's circumstances do not warrant the application of the constructive service doctrine. Barnick was a reservist who had only been on temporary active duty assignments never longer than thirty days, and he was on inactive status at the time of the improper action. Even if Barnick's injury had been properly classified ILOD, he would still have been medically evaluated, found unfit for duty due to physical disability, and either retired or discharged. The cases do not support treating a service member as being on constructive active duty in such circumstances. In each case applying the constructive service doctrine cited by Barnick, the plaintiff was on extended active duty and able to continue on active duty when the improper action leading to his separation from the service occurred. See, e.g., Christian, 337 F.3d 1338 at 1341; Groves v. United States, 47 F.3d 1140, 1142 (Fed. Cir. 1995); Bray v. United States, 515 F.2d 1383, 1385 (Ct. Cl. 1975); Clackum v. United States, 296 F.2d 226, 226 (Cl. Cl. 1960);

Egan v. United States, 158 F. Supp. 377, 379–80 (Ct. Cl. 1958). As such, absent the improper action or discharge, the service member would have remained in the military on active duty. None of the constructive service doctrine cases involved a plaintiff who claimed that he should have been retained on active duty merely for disability evaluation, and we agree that those cases are inapplicable to such a situation.[6]

Here, there is no evidence that Barnick would have been able to continue on active duty in 1998, nor is there any evidence that Barnick even asserted his ability to do so at the time. Indeed, Barnick's first application to the AFBCMR admitted that he was no longer fit for service: "[T]he Air Force failed to evaluate Petitioner for disability retirement . . . even though he met its requirements." J.A. 138. Thus, if improperly denied disability payments in 1998, Barnick should be entitled only to receive the disability payments due to be paid on that date. We have repeatedly recognized that this remedy is appropriate where disability payments have been improperly denied. See, e.g., Fisher v. United States, 402 F.3d 1167, 1177–84 (Fed. Cir. 2005) (recognizing that courts can review a former serviceperson's claim for disability pay at the time of release); McHenry v. United States, 367 F.3d 1370 (Fed. Cir. 2004) (reviewing a Marine officer's challenge to his disability rating at the time of retirement); Jordan v. United States, 205 Ct. Cl. 65 (1974) (reversing the Army's refusal to grant disability pay at the time of discharge); Ward v. United States, 178 Ct. Cl. 210 (1967)

---

[6] Barnick asserts that the officer in Groves was not in fact on active duty when he was discharged from the military. This is correct but irrelevant. Groves claimed that he had been illegally removed from active duty and returned to reserve status in 1983. He claimed active duty pay from that date until the date of his actual discharge in 1991. Groves was not based on an illegal discharge, but on an illegal removal from active duty. See 47 F.3d at 1142–43.

(awarding Naval officer disability retirement pay retroactive to his release from active duty). The Board is competent to make such a retroactive disability determination. Sawyer v. United States, 930 F.2d 1577, 1581 (Fed. Cir. 1991). Here, the Board awarded Barnick disability severance retroactive to 1998, so he has already received all the relief to which he was entitled as the result of the alleged illegal discharge.

By resetting Barnick's discharge date to January 25, 1998, the Board was in fact adhering to the same policy underlying the constructive service doctrine: to place Barnick in the position he would have occupied absent the improper action—the NLOD finding. See Roth v. United States, 378 F.3d 1371, 1381 (Fed. Cir. 2004) ("The Secretary is obligated not only to properly determine the nature of any error or injustice, but also to take 'such corrective action as will appropriately and fully erase such error or compensate such injustice.'" (quoting Caddington v. United States, 178 F. Supp. 604, 606 (Ct. Cl. 1959)). As our predecessor court recognized, "the discretionary power granted to the Correction Boards by [10 U.S.C. § 1552] includes the power to backdate discharges where such backdating places the claimant where he likely would have been absent the improper discharge." Denton v. United States, 204 Ct. Cl. 188, 200 (1974); see also O'Callahan v. United States, 451 F.2d 1390, 1391–93 (Ct. Cl. 1971); Kimmel v. United States, 196 Ct. Cl. 579, 588–91 (1971). Thus, it was appropriate for the Board to order Barnick's discharge date to be changed retroactively to January 25, 1998, as Barnick would still have been discharged at that time for physical disability even if his injury had been properly found ILOD. The Board merely proceeded in such a manner as to best approximate, in its judgment, what would have occurred in 1998 but for the improper NLOD finding.

2008-5074                                        13

The Court of Federal Claims did not err in finding that the AFBCMR's decision not to award Barnick constructive active duty pay was not arbitrary, capricious, or contrary to law.

## II Disability Rating

Next, Barnick asserts that the award of 10% disability retroactive to 1998 was insufficient, and that he should have been awarded a higher disability rating. The Court of Federal Claims concluded that the AFBCMR's decisions setting Barnick's disability rate were not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. Barnick, 80 Fed. Cl. at 558–60. Barnick contends that procedural flaws in conducting his medical reviews resulted in an erroneously low disability rate. We reject these procedural challenges.

Barnick's primary challenge to the Air Force's medical evaluations is that they were all conducted to assess his physical condition on January 25, 1998, rather than his current condition at the time of the evaluations. In light of Barnick's proper discharge on January 25, 1998, however, this contention is without merit. Under 10 U.S.C. § 1203, the statutory provision under which Barnick was discharged, the extent of a service member's disability is to be determined at the time that he is found unfit for duty and separated from the service. See 10 U.S.C. § 1203(a), (b)(4); see also Unterberg v. United States, 412 F.2d 1341, 1346 (Ct. Cl. 1969) ("[T]he fact that a plaintiff's condition may have deteriorated subsequent to his release from service is not of itself determinative of the issue as to his fitness at the time of his release."). Thus, Barnick's discharge date and the date upon which his disability rating is based are inextricably

tied. Barnick offers no authority for separating the two, and he was properly evaluated as of January 25, 1998.

Barnick further argues that various procedural flaws by the MEB contributed to an erroneous disability rating. He alleges that the Air Force violated its own regulations by having only one doctor on the MEB rather than three. However, the Air Force properly followed its regulations: one doctor prepared the "MEB Narrative Summary," a document briefly describing Barnick's medical condition, see Air Force Instruction 44-157, ¶ 3.6.1–.2, and three doctors reviewed Barnick's medical record and signed the MEB report. In addition, Barnick argues that the MEB failed to make a required recommendation and medical prognosis. This is also unsupported by the evidence. The regulation to which Barnick refers, Air Force Instruction 44-157, ¶ 3.6.1, describes the Narrative Summary, not the MEB, and specifies that there is to be a section for "Final Diagnosis/Recommendation," which in Barnick's case did present a final diagnosis of back pain. The doctor who completed the Narrative Summary noted that "due to the complex administrative and legal issues in the case I will make no recommendations." J.A. 86. However, this is appropriate, as the regulations require that "[t]he preparing physician will refrain from making comment . . . concerning fitness for duty or expected disability process outcome." Air Force Instruction 44-157, ¶ 3.6.2. Therefore, the Court of Federal Claims did not err in finding that the AFBCMR did not act arbitrarily, capriciously, or contrary to law in directing that Barnick's condition be evaluated as of January 25, 1998, and adopting the dual recommendations of the PEB and the 2006 medical report that Barnick's disability rating be set at 10%.

Barnick also asserts that it was error for the Court of Federal Claims to refuse to consider new evidence not previously before the Board as to the extent of his disability. At the trial court, Barnick presented for the first time a letter from a physician, Dr. Janerich, opining on the level of Barnick's disability and suggesting a (considerably) higher disability rating. The court refused to consider this letter, however, because it had not been before the Board and was not part of the administrative record. Barnick, 80 Fed. Cl. at 560. This court reviews evidentiary rulings under an abuse of discretion standard. Yankee Atomic Elec. Co. v. United States, 536 F.3d 1268, 1272 (Fed. Cir. 2008).

Recently in Walls v. United States, 582 F.3d 1358 (Fed. Cir. 2009), we held that where evidence could have been submitted to a corrections board and was not, the evidence is properly excluded by the Court of Federal Claims. Id. at 1368. Here, Barnick has offered no showing of why he did not provide the AFBCMR with his medical evidence. Barnick had already visited Dr. Janerich on multiple occasions to assess his disability prior to his response to the 2006 medical report and prior to the Board's final decision. Because Barnick did not present his evidence to the Board, he was precluded from presenting it for the first time at the Court of Federal Claims.

### III  Correction of Records

Barnick also alleges that the AFBCMR's failure to amend his records to eliminate all references to the improper NLOD finding was arbitrary, capricious, and contrary to law. Instead, the Air Force placed a single page in Barnick's military record noting the correction, leaving the rest of the documents intact. The Court of Federal Claims upheld the means by which the service corrected Barnick's record. Barnick, 80 Fed. Cl.

at 557–58. Since that time, the government has agreed to expunge Barnick's records of any references to the corrected NLOD finding. Therefore, this claim is moot.

## IV  Medical Reimbursement

Finally, Barnick asserts that he continues to be denied medical reimbursement following the correction of his LOD determination, and that the Board's failure to enforce those payments was arbitrary, capricious, and contrary to law. The Court of Federal Claims rejected this claim apparently on the ground that Barnick had not yet submitted all of the required documentation to the Air Force so that his reimbursement could be processed. See Barnick, 80 Fed. Cl. at 551 n.4. He did so shortly before the court issued its decision, but his request had not yet been acted on at the time of the decision. Thus, the Court of Federal Claims did not err in rejecting Barnick's medical reimbursement claim, as it did not mature until reimbursements were acted on unfavorably by the Air Force. That occurred while this appeal was pending. To the extent that Barnick disagrees with the Air Force's decision not to reimburse certain expenses, the trial court's decision does not preclude Barnick from filing another claim with the court.

## CONCLUSION

For the aforementioned reasons, we affirm the Court of Federal Claims' grant of judgment on the administrative record in favor of the government upholding the AFBCMR's decisions.

## AFFIRMED

## COSTS

No costs.