**Adam M. BOYLE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 10–853C.**

United States Court of Federal Claims.

Nov. 7, 2011.

---

Jason E. Perry, Cheshire, CT, for plaintiff.

Russell J. Upton, Washington, DC, with whom was Assistant Attorney General Tony West, for defendant. Major Elizabeth A. Walker, United States Army Litigation Division, Arlington, VA, of counsel.

## MEMORANDUM OPINION AND ORDER

CHRISTINE O.C. MILLER, Judge.

This review of a rejection of a former servicemember's request to the Army Board for Correction of Military Records (the "ABCMR" or the "correction board") to set aside his discharge, to reinstate him for continued disability processing, and to award him back pay is before the court on cross-motions for judgment on the administrative record. The key issue presented is whether plaintiff has sustained his considerable burden in challenging the ABCMR's decision for evaluating under an erroneous standard plaintiff's claim of mental impairment that allegedly led to acts precipitating his discharge. Argument is deemed unnecessary.

## FACTS

### I. *Background*

The facts are drawn from the administrative record. Adam M. Boyle ("plaintiff") enlisted in the United States Army (the "Army") on January 28, 2000. AR 288. He served on continuous active duty—attaining the rank of Sergeant (E–5)—until he was involuntarily discharged in early 2009. AR 23. During his service plaintiff was twice deployed to Iraq, *id.*, and, upon his return from his second deployment, he began exhibiting symptoms of posttraumatic stress disorder ("PTSD"), AR 191. In May 2007 plaintiff's commander referred him for a mental health evaluation on account of "sleep problems and multiple episodes of missing formation due to the side effects of prescription medication." *Id.* Following that evaluation, plaintiff was diagnosed with PTSD. *Id.* Nonetheless, plaintiff was permitted to continue on active duty.

In September 2007 plaintiff began suffering from debilitating headaches. AR 239. Shortly thereafter, he began having disciplinary problems, including failing to report to his assigned place of duty, AR 77, and engaging in violent altercations, AR 33. Specifically, in November 2007, a domestic dispute erupted between plaintiff and his then-girlfriend. AR 68–76. She alleged that plaintiff continued to harass her after the incident via instant messages and telephone calls, thus causing her to obtain a restraining order against plaintiff. *Id.* On December 31, 2007, plaintiff engaged in an altercation with a male house guest. AR 59–60. Plaintiff subdued the man and, in a rage, punched a hole in his wall and began "trashing" his home. *Id.* When a female guest intervened, plaintiff pushed her away. *Id.* He was arrested for physical assault. *See* AR 82–94. Finally, on April 3, 2008, plaintiff was arrested for disorderly conduct and resisting arrest while patronizing a bar. AR 95–96. From April 4 through April 7, 2008, plaintiff was absent without leave from his unit, a violation of the Uniform Code of Military Justice, 10 U.S.C. § 886 (2006) (the "UCMJ"). AR 60.

In June 2008 plaintiff again was examined by physicians who assigned him a permanent

physical profile, which restricted him from deploying, using weapons, working shifts in excess of eight hours, and performing other tasks commonly required of soldiers. AR 173. The evaluation revealed that plaintiff's condition had deteriorated to such an extent that he no longer met retention standards. Plaintiff was referred to a Medical Evaluation Board (the "MEB"). *Id.*

On July 18, 2008, plaintiff's commanding officer, Captain Ashley R. Worlock, informed plaintiff that she would be initiating separation proceedings to remove him from the Army based on various acts of misconduct. AR 210–12. Captain Worlock recommended that plaintiff receive an "other than honorable discharge." AR 211. Plaintiff elected to exercise his rights to counsel, to appear before an administrative separation board for a hearing, and to submit statements on his behalf. AR 209.

## II. *Procedural History*

The separation board convened on October 29, 2008. AR 31–34. Both the Army and plaintiff presented witness testimony and documentary evidence. AR 36–58, 63–179. The separation board found that plaintiff had engaged in a pattern of misconduct and recommended his discharge from the Army with a "general (under honorable conditions)" characterization of service. AR 61.

The MEB also convened on October 29, 2008, to determine whether plaintiff's PTSD and headaches warranted a medical discharge. AR 180. After reviewing plaintiff's physical evaluation that took place on October 23, 2008, the MEB concluded that plaintiff did not meet retention criteria and referred him to the Physical Evaluation Board (the "PEB") for further adjudication. AR 182–86. Because plaintiff was facing both medical-based and administrative separation, Army regulations required the General Court–Martial Convening Authority (the "GCMCA" or the "separation authority") to elect the channel through which plaintiff's discharge would be processed. Army Reg. 635–200, Active Duty Enlisted Administrative Separations, ¶ 1–33.b.(1) (June 6, 2005). On December 11, 2008, the GCMCA approved plaintiff's administrative separation

without issuing written findings. AR 27. The GCMCA's decision did not state whether or not plaintiff's PTSD caused the acts of misconduct that resulted in his separation. Plaintiff was discharged on January 6, 2009. AR 23.

In May 2009 plaintiff sought review of his discharge by the ABCMR, alleging that "[h]e should be reinstated to Active Duty ... and processed for physical disability evaluation." AR 13. On March 4, 2010, the ABCMR denied plaintiff's application. *See* AR 3–10. Finding that plaintiff's arguments in support of his application "appear[ed] to lack merit," AR 8, the ABCMR, applying a standard of insanity, explained that, "[w]hile there is evidence to show that [plaintiff] had been diagnosed with PTSD, there is no evidence to show that a determination was made that the applicant did not know the difference between right and wrong or that he could not adhere to the right," AR 9. Thus, the ABCMR found that plaintiff was properly discharged. *Id.*

On December 10, 2010, plaintiff filed a complaint in the United States Court of Federal Claims. Plaintiff alleged that the decision to discharge him—and thus deny him pay to which he would otherwise be entitled pursuant to 37 U.S.C. § 204 (2006)—was arbitrary, capricious, and contrary to law in that it violated Army regulations and plaintiff's constitutional due process rights.

## DISCUSSION

### I. *Jurisdiction*

■ Plaintiff's complaint and the subsequent cross-motions for judgment on the administrative record are grounded in 37 U.S.C. § 204 (the "Military Pay Act"). It is well established that the Military Pay Act is a money-mandating statute and that claims for back pay based on the Military Pay Act are within the jurisdiction of the Court of Federal Claims. *Metz v. United States,* 466 F.3d 991, 998 (Fed.Cir.2006).

### II. *Standard of review*

#### 1. *Judgment on the administrative record*

The parties filed cross-motions for judgment on the administrative record pursuant

to RCFC 52.1, which provides a procedure for parties to seek an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum v. United States,* 404 F.3d 1346, 1356 (Fed.Cir.2005). The parties are limited to the agency record and individual statements of fact submitted under RCFC 52.1. The court must make its findings of fact from this record as if it were conducting a trial. *Id.* at 1357.

### 2. *Decisions of boards for correction of military records*

■ Plaintiff challenges the decision rendered by a correction board. The court reviews such decisions under a deferential standard so as not to "disturb the decision of the [correction board] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick v. United States,* 591 F.3d 1372, 1377 (Fed.Cir.2010) (citing *Chambers v. United States,* 417 F.3d 1218, 1227 (Fed.Cir.2005)). "This [standard of review] necessarily limits the Court of Federal Claims' review to the administrative record," except in extremely limited circumstances when the court may consider " 'extra-record' evidence." *Metz,* 466 F.3d at 998. Plaintiff's burden is to show by "cogent and clearly convincing evidence" that the decision of the correction board fails this standard. *Wronke v. Marsh,* 787 F.2d 1569, 1576 (Fed. Cir.1986) (citation omitted) (internal quotation marks omitted). Plaintiff also must overcome the presumption of regularity that attaches to the actions of a correction board. *See Richey v. United States,* 322 F.3d 1317, 1326 (Fed.Cir.2003) (noting "the presumption of regularity that attaches to all administrative decisions" in the context of military board action).

### III. *Whether plaintiff's discharge was processed unlawfully given his pending disability evaluation*

Plaintiff contends that the decision of the correction board not to set aside plaintiff's administrative discharge and reinstate him for disability processing was "arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Barnick,* 591 F.3d at 1377. In his application to the ABCMR,

plaintiff identified seven legal errors or injustices that, according to plaintiff, entitled him to the relief sought. *See* AR 11–20. Plaintiff reiterated those arguments in his complaint. The court will address them in turn.

### 1. *Whether the ABCMR considered plaintiff's complete service record*

Plaintiff argues that the separation board, in determining whether or not to discharge plaintiff through administrative channels, considered an outdated Enlisted Record Brief (the "ERB") that did not include plaintiff's third receipt of the Army Achievement Medal (the "AAM") awarded for meritorious service in Iraq. [Compl. ¶ 27] Defendant counters that, although the ERB did not include a record of plaintiff's award, the separation board had before it evidence of plaintiff's receipt of this award. Def.'s Br. filed Apr. 8, 2011, at 9. Plaintiff also availed himself of the opportunity to offer documentary evidence by submitting certificates of achievement, copies of awards, and evaluation reports for the separation board's review. *Id.* at 9–10.

■ Defendant is correct that the mere fact that the separation board was provided with an incomplete ERB does not render its decision to discharge plaintiff arbitrary or capricious, particularly in light of the fact that plaintiff provided the separation board with copies of the "missing" documents. A discharge may be set aside as arbitrary or capricious when it is not "based on a consideration of the relevant factors ... [such that] there has been a clear error of judgment." *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (describing scope of arbitrary and capricious review under Administrative Procedure Act). In this case it cannot be said that the decision to discharge plaintiff was not based on a consideration of relevant factors merely because the ERB did not include plaintiff's receipt of the AAM. Army regulations permit separation when a soldier has committed a minor infraction or engaged in a pattern of misconduct. In reviewing the separation board's decision to discharge plaintiff, the ABCMR found that the administrative record supported the

board's decision. Not only did the record before the correction board include plaintiff's receipt of the AAM, it also included three incidents involving assault on a female, one involving plaintiff's absence without leave, and one involving plaintiff's failure to report to his place of duty. Accordingly, it cannot be said that the ABCMR's affirmation of plaintiff's discharge was rendered arbitrary or capricious on account of the non-inclusion of the AAM in the ERB.

### 2. Whether the lack of a complete record tainted the board's characterization of plaintiff's discharge

Plaintiff also argues that, in relying on an incomplete ERB to determine the characterization of plaintiff's discharge, the separation board violated Army Reg. 635–200 ¶ 3–5.e., which provides that the discharge characterization " 'accurately reflect the nature of service performed.' " Compl. ¶ 27 (quoting Army Reg. 635–200 ¶ 3–5.e.). The regulation further states that an "honorable" characterization may be appropriate if the discharged servicemember has been awarded a "personal decoration" during his current enlistment period. Id. (citing Army Reg. 635–200 ¶ 3–7.a.(2)(d)). Because the ERB considered by the separation board did not include the AAM, plaintiff contends that the discharge characterization was flawed because his receipt of this award entitled him to an honorable discharge. Id.

Defendant responds that, even where a servicemember has received such a decoration, the regulation provides only that his discharge "may" be characterized as honorable. Def.'s Br. filed Apr. 8, 2011, at 10. According to defendant, by instructing that an evaluation of a soldier's service " 'must be based on the overall period of service and not on any isolated actions,' " Army regulations require that the separation board consider plaintiff's conduct throughout his service and not merely his receipt of a decoration following his most recent deployment. Id. (quoting Army Reg. 635–200 ¶ 3–5.e.(3)).

█ The Army regulations set forth a number of considerations to guide the Army in characterizing a soldier's separation. See Army Reg. 635–200 ¶¶ 3–5., 3–7. The main thrust of these regulations is that the characterization should reflect accurately the soldier's pattern of behavior throughout his service. See id. ¶ 3–5.e. This counsels against characterization based on plaintiff's receipt of the AAM and against characterization based on isolated incidents of misconduct; however, the separation board found—and the ABCMR affirmed—that plaintiff engaged in a pattern of misconduct that continued for a period of time. See AR 5–6. Although the regulations explicitly did not foreclose plaintiff from obtaining an honorable characterization, they did not guarantee him one. The Army was granted discretion to consider and weigh plaintiff's "infractions of discipline," Army Reg. 635–200 ¶ 3–7.a.(2)(a), as well as his receipt of the AAM, id. ¶ 3–7.a.(2)(d). The separation board, acting within the discretion granted to it, determined that, despite plaintiff's award, his pattern of misconduct warranted a "general under honorable conditions" characterization. Because the record contained evidence of the pattern of misconduct that formed the basis of the board's decision, the ABCMR's failure to find the characterization flawed on account of an incomplete record is not arbitrary or capricious.

### 3. Whether plaintiff's administrative separation was illegal punishment

The administrative separation was initiated pursuant to Chapter 14 of Army Regulation 635–200, which governs discharge for a pattern of misconduct. According to plaintiff, the Army was using the administrative separation as a form of punishment as evidenced by Captain Worlock's testimony that "the Chapter is his punishment" for his disorderly conduct arrest in April 2008. Pl.'s Br. filed May 10, 2011, at 12 (quoting AR 17). Plaintiff explains that the separation action was administrative and non-judicial in nature, as compared to the alternative—court-martial proceedings. Non-judicial punishment is governed by Article 15 of the UCMJ, which specifies the maximum non-judicial punishment that can be imposed on enlisted members. Arguing that separation exceeded the punishment authorized by the UCMJ, plaintiff contends that his separation constitutes

an illegal punishment, rendering the decision to discharge plaintiff contrary to law and Army regulations. *Id.* at 12–13.

Defendant's riposte is that punishment under the UCMJ is more severe than administrative separation. Def.'s Br. filed July 1, 2011, at 6. A soldier punished under the UCMJ faces a potentially stigmatizing conviction and deprivation of liberty and property, while a soldier subject to administrative separation proceedings is merely "removed from employment" if he is found unfit to serve. *Id.* Although Captain Worlock testified that the administrative separation was a form of punishment, she further opined that plaintiff was no longer fit to be a soldier. AR 45. Army regulation 635–200, which "promote[s] the readiness of the U.S. Army," Army Reg. 635–200 ¶ 1–1.b., "[p]rovide[s] for the orderly administrative separation of soldiers" who are found unsuitable to serve, *id.* ¶ 1–1.b.(4). Thus, defendant explains, although Captain Worlock used the word "punishment," AR 45, she "had a legal basis for initiating separation proceedings," Def.'s Br. filed July 1, 2011, at 6.

The procedures by which plaintiff was separated pursuant to Chapter 14 of Army Regulation 635–200 were not contrary to law or Army regulations. The separation policies set forth in Army Regulation 635–200 further the regulation's goal of ensuring that only those competent to serve remain in a position to do so. *See* Army Reg. 635–200 ¶ 1–1.a. to 1–1.b. Soldiers may be deemed unfit to serve—and thus subject to administrative separation—for any number of reasons. For example, ¶ 14–1. "establishes policy and prescribes procedures for separating personnel for misconduct because of minor disciplinary infractions, *a pattern of misconduct,* commission of a serious offense, conviction by civil authorities, desertion, and *absence without leave.*" Army Reg. 635–200 ¶ 14–1. (emphasis added).

■ In this case, although plaintiff's administrative separation was initiated following his arrest and thus appears to be punishment, it nonetheless was appropriate because plaintiff's competency to serve had been put in question. *See* AR 45 (indicating that various Army personnel questioned plaintiff's

competency and reliability). Moreover, ¶ 1–1.c.(3)(b) states that "[s]oldiers who do not conform to required standards of discipline and performance and soldiers who do not demonstrate potential for further military service should be separated...." Army Reg. 635–200 ¶ 1–1.c.(3)(b). Accordingly, Captain Worlock acted well within the bounds of Army Regulation 635–200 when she pursued plaintiff's separation following his arrest for disorderly conduct—one of several disciplinary incidents noted by the separation board. Thus, the separation is not illegal punishment, and the ABCMR's decision upholding the separation is not arbitrary or capricious.

4. *Whether the separation violated plaintiff's right to be given notice of the reason for the separation processing*

In recommending that plaintiff be separated from the Army, the separation board determined that plaintiff engaged in a pattern of misconduct on account of his absence without leave, assaults on two females, arrest for disorderly conduct, and failure to report to his assigned place of duty. AR 33. The board made the "[a]dditional [f]inding[ ]" that plaintiff "commit[ted] act(s) of misconduct by violating his profile by consuming alcohol." *Id.*

Army Regulation 635–200 ¶ 2–4.a.(1) provides that a commander will inform a solider of the "specific allegations" leading Army personnel to recommend his separation. In seeking review from the ABCMR, plaintiff contended that his due process rights were violated because he was not notified of one basis for his separation: violation of his profile by consuming alcohol. AR 18. The ABCMR did not address this argument directly; however, its findings illuminate the scope of its review. First, the ABCMR identified the various incidents that plaintiff was informed gave rise to the initiation of separation proceedings; this list did not contain an allegation that plaintiff violated his profile. AR 5. Second, the ABCMR noted testimony from plaintiff's commander advising the separation board that plaintiff had been disenrolled from a substance abuse program because he continued to drink and exhibited sporadic attendance. *Id.* Thus, although the

ABCMR did not explicitly respond to plaintiff's assignment of error, the record confirms that it was aware that the separation board based its decision, in part, on conduct that was not identified as an allegation against plaintiff and did not find that such action rendered the discharge unlawful.

Plaintiff raises this same argument before this court. He first contends that, because the ABCMR did not address this issue in its review, defendant should be barred from raising a defense to it in these proceedings. Pl.'s Br. filed May 10, 2011, at 11. Next, plaintiff argues that defendant's defense—if permitted—is without merit. *Id.* Defendant relies on ¶ 2–11.b., which provides that, "[i]f prior to the beginning of the board hearing, the commander or board recorder discovers additional evidence, similar in nature to that previously considered by the commander in recommending the separation, that evidence is admissible." Army Reg. 635–200 ¶ 2–11.b. Defendant explains that testimony regarding plaintiff's alcohol consumption was elicited during the hearing from plaintiff's first sergeant and his commander. According to defendant, because this evidence related to a stated basis for separation—namely, plaintiff's disorderly conduct arrest—plaintiff's alcohol use is "similar in nature to that previously considered," *id.*, and may properly be considered by the separation board pursuant to paragraph 2–11.b. Plaintiff accuses defendant of conflating evidence and a basis for separation, implying that paragraph 2–11.b. is not applicable because it addresses newly discovered evidence and that violating a profile by consuming alcohol is a basis for separation—not evidence. Pl.'s Br. filed May 10, 2011, at 12.

Defendant also relies on Army Reg. 15–6, Procedures for Investigating Officers and Boards of Officers (October 2, 2006), which establishes the procedures to be utilized by factfinding boards.[1] Paragraph 2–3.c.(4) states that "[n]o error is substantial ... if there is a failure to object or otherwise bring the error to the attention of the legal advisor or the president of the board at the appro-priate point in the proceedings." Army Reg. 15–6 ¶ 2–3.c.(4). Defendant explains that, in order to preserve an objection that the separation board improperly considered a matter that was not disclosed to plaintiff as a basis for his separation, plaintiff was required to object during the board proceeding or identify post-proceeding specific legal issues to be considered by the separation authority. Def.'s Br. filed Apr. 8, 2011, at 13. Because plaintiff failed to take either step, defendant contends that plaintiff's "assertion of this legal error is waived and considered harmless error...." *Id.* This alleged error is further rendered harmless because it was one of several acts of misconduct upon which the board relied in recommending separation. Those other acts—which defendant proffers are "much more egregious than violating a no drinking profile"—were sufficient grounds on which to recommend separation. Def.'s Br. filed July 1, 2011, at 5. Moreover, defendant explains that plaintiff's alcohol consumption was linked inextricably to his disorderly conduct arrest—an incident that plaintiff was informed was a basis for separation. *Id.*

Plaintiff's response is two-fold. First, noting that defendant opened the door to issues arising from application of Army Reg. 15–6, plaintiff identifies a number of ways in which the Army failed to comply with that regulation. Pl.'s Br. filed Aug. 5, 2011, at 10–12. Specifically, defendant did not provide plaintiff with a copy of the case file nor the names and addresses of expected witnesses. *Id.* at 10. Next, plaintiff counters that harmless error analysis is inappropriate and, even if it was considered appropriate, the alleged error is not harmless. *Id.* at 11. Plaintiff cites *Doyle v. United States,* 599 F.2d 984 (Ct.Cl. 1979), for the proposition that harmless error analysis is inappropriate where the court "has no way of evaluating the effect of the error on the judgment," *id.* at 995, and explains that, in this case, it is unclear whether the board would have recommended plaintiff's separation had it not found that he committed an act of misconduct by violating his profile, Pl.'s Br. filed Aug. 5, 2011, at 12.

---

1. Paragraph 2–10.g. of Army Reg. 635–200 states that "the board will conform to the provisions of A[rmy] R[eg.] 15–6 applicable to formal proceed-ings with respondents." Army Reg. 635–200 ¶ 2–10.g.

Section 1552 of Title 10 delegates power to correct military records to military secretaries. In pertinent part, it provides that

[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.... [S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department.

10 U.S.C. § 1552(a)(1) (2006); *see also Porter v. United States*, 163 F.3d 1304, 1311 (Fed. Cir.1998).

 The scope of changes that can be made to a military record is not restricted. *See Porter*, 163 F.3d at 1311. If an error or injustice is found, and it is determined to be more substantial than harmless error, the Secretary of the cognizant branch can change the military record to correct the error or injustice. Once an injustice is found, "correction boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Sanders v. United States*, 594 F.2d 804, 813 (Ct.Cl.1979) (en banc) (citation omitted) (internal quotation marks omitted), *superseded in part by statute*, 10 U.S.C. § 628 (2006), *as recognized in Porter*, 163 F.3d at 1323–24. The correction is intended to put the servicemember in the same position had the injustice or error not occurred. Correspondingly, no changes will be made when the error or injustice is deemed harmless because harmless errors are not sufficiently significant to change the outcome of a case. *See Wagner v. United States*, 365 F.3d 1358, 1364 (Fed.Cir.2004).

 The ABCMR's decision upholding plaintiff's separation was not rendered arbitrary or capricious by the Army's failure to notify plaintiff that violation of his profile by consuming alcohol was a basis for his separation. The separation board enumerated five acts of misconduct that formed the basis of its recommendation of separation. The board also identified violation of plaintiff's profile as an act of misconduct, but it did so under the heading "Additional Findings," AR 33, suggesting that, although the board had

sufficient information to make this finding, it was superfluous and not necessary to its recommendation. Consequently, this alleged error is harmless, not because plaintiff failed to preserve an objection, as defendant contends, but because it does not affect the outcome of the case. *See Wagner*, 365 F.3d at 1364. Even if violation of plaintiff's profile were to be stricken from the record as a basis for his separation, the separation board's decision is still supported by the primary, i.e., not "additional," findings on which its decision was based.

5. *Whether the Army failed to consider plaintiff's military defense counsel's appeal*

Plaintiff asked the ABCMR to set aside his separation because the Army ignored plaintiff's counsel's request for an appeal. Compl. ¶ 26. Army Reg. 635–200 ¶ 2–6. requires that an officer of the Judge Advocate General's Corps (the "JAG Corps") review the proceedings whenever "the soldier identifies specific legal issues for consideration by the separation authority." Army Reg. 635–200 ¶ 2–6.a. According to plaintiff, in a memorandum submitted to the Army on November 6, 2008, plaintiff's military counsel raised as legal error the separation board's failure to refer plaintiff to a PEB. Compl. ¶ 26; *see also* AR 28–29. This, plaintiff asserts, entitled him to have the matter reviewed by an officer of the JAG Corps. AR 17. Defendant did not directly respond to plaintiff's contention that the Army ignored his request for review by an officer of the JAG Corps.

Plaintiff misstates the contents of the November 6, 2008 memorandum. The memorandum does state that plaintiff "should be medically discharged from the Military," AR 28, but it does not identify a legal error committed by the separation board. In fact, the memorandum indicates mere disagreement with the separation board's decision. It notes that, pursuant to Army regulations, "the GCMCA *may* direct discharge under the PEB system if it is found that the medical condition was a direct or substantial cause of the conduct that led to the separation proceedings," *id.* (emphasis added), implying that the GCMCA could, in its discre-

tion, choose not to refer plaintiff to a PEB. Nowhere in the memorandum does plaintiff's counsel identify any error committed by the separation board or the GCMCA. Moreover, the memorandum requests that plaintiff's separation be delayed to enable his separation through medical channels, AR 29; it did not request review by an officer of the JAG Corps, as plaintiff now contends.

In reviewing the matter, the ABCMR explained that the GCMCA had discretion to decide whether to separate plaintiff via administrative or medical channels. The ABCMR found that a delay was unnecessary because, at the time it made its decision, the GCMCA had findings from both the administrative separation board and the MEB and thus made a fully informed decision, albeit one with which plaintiff disagrees. Rather than identify one specific legal error, counsel's memorandum merely requested that plaintiff's administrative separation be delayed so that a medical discharge could be effected. The ABCMR had a solid factual foundation for concluding that, in the absence of a specific legal error, the GCMCA acted within its discretion when it chose not to discharge plaintiff through medical channels.

### 6. Whether the Army failed to give plaintiff a required rehabilitative transfer

Army Reg. 635–200 ¶ 1–16.c.(2) provides that a soldier shall be reassigned to another unit for at least three months before separation proceedings are initiated against him for engaging in a pattern of misconduct. Plaintiff, noting that he was never reassigned to another unit, relies on this provision to support his contention that the ABCMR's decision is arbitrary and capricious. Compl. ¶ 25. Defendant responds that this requirement may be waived pursuant to Army Reg. 635–200 ¶ 1–16.d. Def.'s Br. filed July 1, 2011, at 3. Paragraph 1–16.d.(2) authorizes the separation authority to waive the transfer requirement "in circumstances where common sense and sound judgment indicate that such transfer will serve no useful purpose or produce a quality soldier." Army Reg. 635–200 ¶ 1–16.d.(2). Consequently, if the separation authority—in its discretion—determined that transfer would "serve no useful purpose," *id.,*

plaintiff's argument fails because transfer in such a situation is not required. According to defendant, it is likely that the GCMCA would have dispensed with the transfer requirement because it was presented with evidence that plaintiff's response to his PTSD treatment "'ha[d] been variable, at times improving and other times worsening.'" Def.'s Br. filed July 1, 2011, at 3 (quoting AR 183). Plaintiff's medical evaluation also indicated that "[h]e will likely continue to have occupational and social dysfunction from his avoidant behavior." AR 183.

■ Plaintiff challenges that, even if GCMCA did waive the transfer requirement, it did so implicitly, without producing a written decision. Apparently acknowledging that the regulation does not state explicitly that the waiver must be in writing, plaintiff explains that it "would do ... injustice to the language about when a waiver may be found" if reviewing entities were required to assume that a waiver had been made. Pl.'s Br. filed May 10, 2011, at 11. This interpretation engraphs onto the regulation a requirement that does not exist. Moreover, plaintiff has not shown that GCMCA abused its discretion or failed to follow the procedures specified in the regulation. As defendant aptly states: "When contesting the process and procedures of military proceedings, the plaintiff bears the burden to overcome the 'strong [...] rebuttable[ ] presumption' that the military discharges its duties 'correctly, lawfully, and in good faith.'" Def.'s Br. filed July 1, 2011, at 4 (quoting *Bernard v. United States,* 59 Fed.Cl. 497, 501 (2004) (citation omitted)).

Further informing the court's conclusion that the GCMCA waived the transfer requirement is ¶ 1–16.d.(2)(f), which permits waiver when transfer "would be detrimental to the Army or the soldier" because, among other reasons, the soldier is enrolled in a substance-abuse program. Army Reg. 635–200 ¶ 1–16.d.(2)(f). In this case plaintiff had been enrolled in an alcohol program but was disenrolled after he continued to drink. This information was presented to the separation board and was available for review by the GCMCA, which could have relied on it as a basis for concluding that transfer would "serve no useful purpose." *Id.* ¶ 1–16.d.(2).

Consequently, because the regulation permits waiver and plaintiff has not demonstrated that GCMCA abused its discretion in waiving the requirement, the court cannot find that the ABCMR acted arbitrarily and capriciously in failing to find the separation improper because plaintiff was not provided with a transfer.

### 7. Whether the Army was required to process plaintiff through medical channels

■ Plaintiff puts forward that, when a soldier is simultaneously processed for administrative separation and subject to a medical evaluation, Army Reg. 635–200 ¶ 14–17. provides that the GCMCA will decide whether he will be administratively or medically discharged. This determination is at the discretion of the GCMCA unless Army Reg. 635–200 ¶ 14–17.g.(1) applies. The latter regulation states that separation via medical channels "is required if the soldier has an incapacitating physical or mental illness that was the direct or substantial contributing cause of the conduct, and action under the UCMJ is not initiated." *Id.* ¶ 14–17.g.(1). The GCMCA did not conclude that medical processing was required; rather, it exercised its discretion and affirmed the separation board's recommendation of discharge through administrative channels.

Acknowledging that the evidence showed that plaintiff had been diagnosed with PTSD, the ABCMR explained that "there is no evidence to show that a determination was made that the [plaintiff] did not know the difference between right and wrong or that he could not adhere to the right." AR 9.[2] Having failed to identify a causal connection between plaintiff's diagnosis and his misconduct and noting that the GCMCA considered the findings and recommendations of both the separation board and the MEB, the ABCMR concluded that the GCMCA properly exercised its discretion and upheld its recommendation.

Plaintiff challenges his separation on the basis that Army Reg. 635–200 ¶ 14–17.g.(1)

required the GCMCA to process him through medical channels because his PTSD was a "direct or substantial contributing cause of [his] conduct." Army Reg. 635–200 ¶ 14–17.g.(1). He contends that the ABCMR's application of a standard of insanity in determining whether medical processing was required renders its decision arbitrary and capricious and contrary to Army regulations. Pl.'s Br. filed May 10, 2011, at 8. Plaintiff concludes that, had the ABCMR engaged in the inquiry called for by Army Reg. 635–200 ¶ 14–17.g.(1), i.e., determining whether plaintiff's PTSD was "the direct or substantial contributing cause" of his misconduct, it would have had no choice but to overturn the GCMCA's decision and require that plaintiff be processed through medical channels. *See* Pl.'s Br. filed May 10, 2011, at 9.

Plaintiff asserts that his records and the testimony provided during the hearing before the separation board lead to the inevitable conclusion that a causal connection has been established between his PTSD and his acts of misconduct. *Id.* Plaintiff's military records reflect that he was an "exemplary Soldier" before his diagnosis and was not prone to getting in fights. *Id.* His former commander remarked that "[t]he charges ... are out of character for the Sergeant Boyle [he] knew" and that he was "surprised with what [was] going on with Sergeant Boyle." AR 50. It matters not, plaintiff argues, that the GCMCA reviewed the recommendations from both the separation board and the MEB because the GCMCA was without discretion to direct the course of plaintiff's separation. According to plaintiff, given the connection between plaintiff's PTSD and his misconduct, Army Reg. 635–200 ¶ 14–17.g.(1) required the GCMCA to order that plaintiff's separation be processed through medical channels.

Defendant counters that it was within the GCMCA's discretion to determine whether or not plaintiff's PTSD was a direct or substantial cause of his misconduct. Def.'s Br. filed Apr. 8, 2011, at 15. Following review of the MEB's findings and recommendations, the GCMCA did not see fit to refer plaintiff for

---

**2.** Neither the separation board nor the GCMCA applied this insanity standard or otherwise explicitly addressed whether a causal connection

existed between plaintiff's PTSD and his behavior.

medical processing. *Id.* at 15–16. Moreover, defendant argues that plaintiff has failed to overcome the presumption that the military correctly discharges its duties because he failed to present evidence that his PTSD caused him to commit those acts forming the basis of his separation. Def.'s Br. filed July 1, 2011, at 2. *See Hary v. United States,* 618 F.2d 704, 707–08 (Ct.Cl.1980) (citations omitted), *superseded in part by statute,* 10 U.S.C. § 628 (2006), *as recognized in Porter,* 163 F.3d at 1323–24.

The court concludes that the ABCMR acted in an arbitrary and capricious manner and contrary to law when it upheld the GCMCA's decision to process plaintiff through administrative channels. The ABCMR reasoned that, "[i]n the absence of evidence to the contrary, it must be presumed that the GCMCA took into account the applicant's record of service, his acts of misconduct, and his medical evaluation. . . ." AR 9. This reasoning is flawed because it assumes that the GCMCA had discretion to decide how to process plaintiff's separation on the basis of the information before it. The GCMCA only possesses such discretion if plaintiff's PTSD is not a "direct or substantial contributing cause" of his misconduct. Necessarily, the first inquiry must be whether plaintiff's disorder is such a cause.

It does not appear that the GCMCA undertook to determine whether there was such a causal connection; rather, its decision indicates that the GCMCA reviewed the findings of the separation board and approved them. *See* AR 27. The separation board's findings merely identified the dates on which plaintiff was found to have engaged in misconduct, but they neither mentioned his PTSD nor noted a connection between the disorder and the acts of misconduct. Likewise, the ABCMR also failed to determine whether plaintiff's PTSD was a contributing cause of his misconduct. Although the ABCMR addressed plaintiff's condition, it *ex cathedra,* without reference to any source or other authority, applied a standard of insanity and concluded that plaintiff was discharged properly because no evidence showed that he could not distinguish right from wrong. This was not the correct standard to apply in deciding whether to process plaintiff medically or administratively. *Cf. Jennings v. Mansfield,* 509 F.3d 1362, 1367 (Fed.Cir. 2007) (noting that, while magic words are not necessary, the administrative board must "in substance . . . articulate[ ] the correct burden of proof"). Consequently, the ABCMR accepted the GCMCA's exercise of discretion without first determining whether it had discretion to exercise.

Moreover, despite its reference to a standard—albeit an incorrect one—by which to evaluate plaintiff's disorder, the ABCMR did not purport to engage in its own assessment of the evidence presented as to plaintiff's PTSD in order to determine whether it was causally connected to his misconduct. Thus, an explicit requirement of Army Reg. 14–17.g.(1)—that it be determined whether plaintiff's PTSD was a "direct or substantial contributing cause" of his misconduct—remained unaddressed after three administrative bodies undertook to decide whether plaintiff should be separated on account of misconduct.

Finally, plaintiff has overcome the presumption of regularity that attaches to the ABCMR's action by demonstrating that the correction board and the GCMCA violated Army Reg. 635–200 ¶ 14–17.g.(1) by failing to determine whether there was a causal connection between plaintiff's PTSD and his conduct requiring that his separation be processed through medical channels. *See Bond v. Shinseki,* 659 F.3d 1362, 1368–69 (Fed.Cir. 2011) (explaining that, where Board of Veterans Appeals failed to "address[ ] a critical and determinative issue," the presumption of regularity would not serve to "insulate the VA's error[ ] from review" merely because there was "no firm trace of its dereliction in the record"). This matter is therefore remanded with instructions to the ABCMR to establish whether or not plaintiff's PTSD is a "direct or substantial contributing cause" of his misconduct in accordance with Army Reg. 635–200 ¶ 14–17.g.(1). If the requisite causal connection is established, plaintiff must be processed through medical channels.

The cross-motions have winnowed down plaintiff's many individual challenges. That plaintiff ultimately sustained one ground

does not marginalize its significance. This court recognizes that several of plaintiff's unsuccessful arguments serve to place this separation in the reality in which it occurred—a disinclination to acknowledge the total behavioral transformation of a soldier after his second deployment to Iraq and after a diagnosis of PTSD. The Army has promulgated regulations that govern correction board proceedings, and they must be followed unless an error is deemed harmless. What occurred in this case, in contrast, was the application of an erroneous burden of proof to evidence that under the correct standard may well substantiate that a medical condition brought on by service in war is at the root of plaintiff's transformation from an exemplary soldier to one unfit to serve in the Army.

## CONCLUSION

The parties' cross-motions are granted in part and denied in part, consistent with the foregoing. Accordingly,

**IT IS ORDERED,** as follows:

1. Pursuant to RCFC 52.2, this matter is remanded to the Department of the Army, Director, ABCMR, for a period of ninety days or until February 8, 2012, to determine whether plaintiff's PTSD was a "direct or substantial contributing cause" of his misconduct, requiring that his case be processed through medical channels. Army Reg. 635–200 ¶ 14–17.g.(1).

2. On or before February 8, 2012, the Department of the Army, Director, ABCMR shall file with the Clerk of the Court the ABCMR's final decision or notice of other action pursuant to RCFC 52.2(e).

3. Upon the filing of the notice of decision or other action on remand, the parties shall file a Joint Status Report that shall adhere to the requirements of RCFC 52.2(f).